UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CLEAN LABEL PROJECT FOUNDATION<br><br>Plaintiff,<br><br>v.<br><br>GARDEN OF LIFE, LLC.<br><br>Defendant. | Case No. _____ |

## NOTICE OF REMOVAL

Defendant Garden of Life, LLC ("Garden of Life"), hereby removes this case from the Superior Court of the District of Columbia, Civil Division, to the United States District Court for the District of the District of Columbia pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

## BACKGROUND

1. Plaintiff Clean Label Project Foundation ("Plaintiff") filed this action in the Superior Court of the District of Columbia on August 25, 2020. *See* Ex. A ("Compl."). Plaintiff served the Complaint on October 8, 2020. *See* Ex. B. Pursuant to 28 U.S.C § 1446(a), a true and correct copy of the remainder of the Superior Court case file (including all documents other than the Complaint and the Proof Service) is attached hereto as Exhibit C.

2. Defendant Garden of Life, LLC ("Garden of Life" ) is a manufacturer and seller of dietary supplements including vitamins, probiotics, and protein powders.

3. The Complaint brings this action under the D.C. Consumer Protection Procedures Act, D.C. Code §28-3901, *et seq.* and alleges that seven Garden of Life prenatal vitamin products

("Products") are falsely advertised because they contain trace amounts of one or more of the following substances: lead, cadmium, mercury, BPA, and pesticides (various).  Compl. ¶¶ 100-111.  The Complaint identifies marketing statements such as "clean is healthy" that appear on Defendant's website and asserts that these statements are misleading because they are inconsistent with the presence of these substances.  *Id*. ¶¶ 88-94.  The Complaint also asserts that Garden of Life fails to disclose the presence of these substances and that the Products are adulterated because they are unsafe.  *Id*. ¶ 23, 32.

4. Plaintiff avers that it is a "nonprofit organization" and purports to bring this action in a representative capacity under D.C. Code § 28-3905(k)(1)(C), which permits a "nonprofit organization . . . on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, [to] bring an action seeking relief from the use of a trade practice in violation of a law of the District."  Compl. ¶¶ 47, 134-35.  Plaintiff also asserts that it is a "public interest organization" and purports to bring this action in a representative capacity under D.C. Code § 28-3905(k)(1)(D), which provides that a "public interest organization may, on behalf of the interest of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District."  *Id*. ¶¶ 47, 139-40.  The Complaint alleges that Garden of Life's sale and marketing of the Products is an unlawful trade practice in violation of D.C. Code § 28-3904.  Plaintiff seeks "an injunction to halt marketing and sales of the products" (Compl. ¶ 33) and "the remedies available under D.C. Code § 28-3905(k)(2)(A)-(F)," including an order enjoining Defendant's conduct, an Order requiring corrective advertising, treble or statutory damages, attorneys' fees and expert fees, and punitive damages.  *Id.*, Prayer for Relief.

**REMOVAL IS PROPER UNDER CAFA**

5.  The Class Action Fairness Act provides that federal courts have original jurisdiction over (i) a "class action" in which (ii) any plaintiff or class member is diverse from any defendant, where (iii) there are at least 100 members in the putative class, and (iv) the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).  Any such action may be removed to the district court for the district and division embracing the place where the action is pending.  28 U.S.C. § 1441(a).

6.  *This case is a "Class Action."*  Under CAFA, a class action is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State statute* or rule of judicial procedure *authorizing* an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis added).  The CPPA is a "similar State statute" that "authorizes" class actions to be brought by one or more representative persons.  It provides, in particular, that "public interest organizations may, on behalf of the interests of a consumer *or class of consumers*, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer *or class* could bring an action under subparagraph (A) of this paragraph for relief from such use by such person or such trade practice." D.C. Code § 28-3905(k)(1)(D)(i) (emphasis added).  Plaintiff expressly and repeatedly invokes section 28-3905(k)(1)(D) as the basis for this action.  Compl. ¶¶ 46, 136-140.

7.  Furthermore, when a plaintiff seeks monetary relief on behalf of class members under the CPPA, it must satisfy the requirements of D.C. Superior Court Rule 23—regardless of whether it styles its lawsuit as a "class action."  In *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 988 (D.C. 2015), the plaintiff brought a lawsuit under D.C. Code § 28–3905(k)(1) on behalf of himself and "the general public," but attempted to "disclaim[] any intention to seek class

certification under Superior Court Rule of Civil Procedure 23." *Id*. at 982. The Court dismissed the claim on the grounds that "a CPPA claim for money damages brought by an individual on behalf of himself and other similarly situated members of the general public is in essence a class action, whether pled as such or not, and must satisfy the requirements of Rule 23." *Id*. at 982 (emphasis in original) (quoting *Margolis v. U–Haul Int'l, Inc.,* 2007 CA 5245, 2009 WL 5788369 (D.C. Super. Ct. Dec. 17, 2009)).

8. Like *Rotunda* and *Margolis*, this is a case for money damages. Plaintiff seeks "the remedies available under D.C. Code §28-3905(k)(2)(A-F)." Those remedies include "Treble *damages*, or $1,500 per violation, whichever is greater, *payable to the consumer*." *Id*. § 28-3905(k)(2)(A)(i) (emphasis added). Plaintiff also seeks punitive damages, attorneys' fees and costs and disbursements, and an Order requiring Defendant to provide corrective advertising. Compl. ¶ 141, Prayer for Relief. This case is accordingly a "class action" for purposes of CAFA.[1]

9. *There is minimal diversity.* CAFA gives federal courts jurisdiction over class actions when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). That requirement is met here because Defendant is a limited liability company headquartered in Florida, whose members are residents of Delaware. Compl. ¶ 43. Plaintiff brings this action on behalf of consumers in the District of Columbia.

---

[1] Garden of Life acknowledges that courts in this District have found that representative actions under the DC CPPA do not constitute "class actions" for purpose of CAFA. *See, e.g.*, *Hackman v. One Brands, LLC*, No. CV 18-2101 (CKK), 2019 WL 1440202, at *3 (D.D.C. Apr. 1, 2019); *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 64 (D.D.C. 2017); *Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 36 (D.D.C. 2014). However, *National Consumers League* pre-dated *Rotunda*, and neither *Hackman* nor *Animal Legal* involved a suit brought under D.C. Code § 28-3905(k)(1)(D), which expressly authorizes class actions. The Court of Appeals for the District of Columbia has not issued an opinion on the question, and Garden of Life respectfully submits that D.C. law is controlling, and that *Hackman*, *Animal Legal*, and *Nat'l Consumers League* were incorrectly decided inasmuch as they are inconsistent with *Rotunda* and the plain language of CAFA.

*See, e.g.*, *id*. ¶ 33 ("Plaintiff brings this action on behalf of itself and the general public"); *id*. ¶¶ 27-28, 31 (asserting Defendant's practices deceived "D.C. Consumers"); *id*. ¶ 45 ("Defendant has caused harm to the general public of the District of Columbia"). Plaintiff is headquartered in Colorado. Compl., Caption. CAFA's minimal diversity requirement is thus satisfied. 28 U.S.C. § 1332(d).

10. *The amount in controversy exceeds $5 million.* CAFA provides that, "[i]n any class action, the claims of the individual class members *shall be aggregated* to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6) (emphasis added). The Court must therefore "add[] up the value of the claim of each person who falls within the definition of the proposed class." *Std. Fire Ins. Co v. Knowles*, 568 U.S. 588, 592 (2013). A notice of removal "need only plausibly allege, not detail proof of, the amount in controversy." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014); *see also Comm. for GI Rights v. Callaway*, 518 F.2d 466, 472 (D.C. Cir. 1975) (When determining the amount in controversy, "[a]bsolute certainty is not essential; it suffices that there is a present probability that the damages . . . meet the statutory requirement.").

11. *Damages:* In this case, over 5,000 Products were sold in the District of Columbia during the class period. As noted above, Plaintiff seeks "the remedies available under D.C. Code § 28-3905(k)(2)(A-F)," one of which authorizes recovery of $1,500 per violation, payable to the consumer. D.C. Code § 28-3905(k)(2)(A)(i); Compl., Prayer for Relief. If the Court were to assess a $1,500 penalty for each product sold, therefore, the total amount of this remedy alone would exceed $5 million.[2] On top of this, the costs associated with the other remedies sought by

---

[2] The number of products sold also means that CAFA's numerosity requirement is met here, because the class will be comprised of far more than 100 persons.

Plaintiff—injunctive relief, corrective advertising, punitive damages and attorneys' fees—would also likely exceed $5 million.

12.     *Injunctive Relief*:  It is well-established that"[i]n a suit for injunctive or declaratory relief, the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Washington State Apple Adver. Comm'n* , 432 U.S. 333, 346-47 (1977); *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) (court looks "either to 'the value of the right that the plaintiff seeks to enforce or protect' *or to the cost to the defendants to remedy the alleged denial [of the right]*") (emphasis added).  In this case, Plaintiff seeks injunctive relief in the form of (1) "an injunction to halt Garden of Life's false and misleading marketing and sale of Garden of Life Products" and (2) an "Order requiring Defendant to provide corrective advertising to the residents of the District of Columbia."  Compl. ¶ 33; *id.*, Prayer for Relief.  If the Court were to issue either of these injunctions, the cost to Garden of Life would likely exceed $5 million.  Corrective advertising would entail purchasing print, digital, television, and radio advertising into the District of Columbia, and the cost of having external marketing firms create the material for the campaign, which could cost millions of dollars.  *See Fefferman v. Dr. Pepper Snapple Grp., Inc.*, No. 13-160, 2013 WL 12114486, at *3 (S.D. Cal. Mar. 12, 2013) (noting that, "[i]n total, the corrective advertisement campaign would cost Defendants approximately $4,985,000").[3]

13.     *Punitive Damages*: This Court has held that "[p]unitive damages are properly considered as part of the amount in controversy."  *McQueen v. Woodstream Corp.*, 672 F. Supp.

---

[3] Other related injunctive relief potentially sought by plaintiff would further increase these costs.  For example, if either injunction required Garden of Life to revise the labeling of the Products, Garden of Life would not only need to design and implement these labeling changes in the District of Columbia, but also either make corresponding changes nationwide or arrange for separate labeling and marketing to be done for Products sold in the District of Columbia.

2d 84, 88 (D.D.C. 2009) (citation omitted).  *See also, e.g., Bell v. Preferred Life Assur. Soc'y,* 320 U.S. 238, 240 (1943); *Ross v. First Family Fin. Servs., Inc.*, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002) ("unspecified claims for punitive damages sufficiently serve to bring the amount in controversy over the requisite threshold set out in 28 U.S.C. § 1332").  While Plaintiff does not provide an indication of the amount of punitive damages it seeks, punitive damages awarded under the D.C. Consumer Protection Act can be significant and could contribute to the amount-in-controversy exceeding $5 million.  *See Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 54 (D.C. 2010) (affirming punitive damages of $2 million and $1.1 million in a CPPA case).

14.     *Attorneys' Fees*:  This Court has acknowledged that "[a]ttorney fees are part of the amount in controversy if they are provided for by statute or contract."  *Info. Strategies, Inc. v. Dumosch*, 13 F. Supp. 3d 135, 144 (D.D.C. 2014) (quotation omitted).  The D.C. Consumer Protection Act provides for attorneys' fees in the same statutory provision invoked by Plaintiff in the Complaint.  D.C. Code § 28-3905(k)(2)(B) (providing for attorneys' fees).  While the amount of attorneys' fees that Plaintiff will seek is not yet known, attorneys' fees awards in other cases brought under the same statute are substantial.  *See, e.g., Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 18, 20 (D.D.C. 2014) (awarding $927,707.89 in attorneys' fees and expenses).  Taken together, the costs associated with penalties, compliance with injunctions, punitive damages and attorneys' fees exceed the $5 million amount in controversy threshold.

15.     Plaintiff may argue that these costs cannot be aggregated and must instead be divided by the population of the District of Columbia.  There is no basis for doing so, because CAFA expressly provides for aggregation of claims, and courts have found that this extends to injunctive relief as well.  28 U.S.C. § 1332(d)(6); *see also Berry v. Am. Express Pub. Corp.*, 381 F. Supp. 2d 1118, 1123 (C.D. Cal. 2005) ("Since plaintiffs can now aggregate their claims to

invoke diversity jurisdiction, finding the amount of controversy from the aggregate cost to defendants does not circumvent any non-aggregation principles and is consistent with the principle that only cases that could have been originally brought in federal court may be removed.); *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1160 (C.D. Cal. 2013) ("that the amount in controversy exceed[s] $5 million in the aggregate may be established 'either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)'") (quoting S. Rep. No. 109–14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. Vol. 4, p. 3, at 40).

## VENUE IS PROPER

16. Venue is proper because this action was initially filed in the Superior Court of the District of Columbia, which is coextensive with the U.S. District Court for the District of Columbia. *See* 28 U.S.C. § 1441(a) (noting that an action may be removed "to the district court of the United States for the district and division embracing the place where such action is pending").

## OTHER REQUIREMENTS FOR REMOVAL ARE MET

17. 28 U.S.C. § 1446(b) provides that notice of removal of a civil action must be filed within thirty days of service of the initial pleading. In this case, Defendant was served on October 8, 2020. Ex. B. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), the deadline for filing this notice of removal is Nov. 9, 2020. This notice of removal is thus timely filed.

18. Garden of Life has not filed any pleadings in the Superior Court responding to the Complaint. It appeared for the sole purpose of filing a consent motion extending its deadline to respond to the Complaint, which appears in the state court case file. Ex. C.

19. Pursuant to 28 U.S.C. § 1446(d), Garden of Life will promptly give written notice of the filing of this Notice of Removal to all parties, and a copy of this Notice will be filed with the Clerk of the Superior Court.

20. Prior to removal, the parties had stipulated to an extension to November 30, 2020 for Garden of Life to respond to the complaint. Garden of Life filed a consent motion effectuating that extension, but the Superior Court has not yet entered that order. *See* Exhibit C. Upon docketing in this court, Garden of Life will refile a stipulation or consent motion in this court setting those dates.

Date:   November 9, 2020

Respectfully submitted,

*/s/  John Cella*
John Cella (DC Bar No. 1035356)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington D.C. 20001-3743
202-942-5000
john.cella@arnoldporter.com

Lori B. Leskin (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
P: +1 212.836.8000
F: +1 212.836.8689
lori.leskin@arnoldporter.com

*Counsel for Defendant Garden of Life, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of November, 2020, true copies of the foregoing instrument were served via U.S. Mail on the following:

> Travis Pittman
> Holmes Pittman Haraguchi, LLP
> P.O. Box 380
> Chester, MD 21619
> jtpittman@hphattorneys.com
>
> Kristen M. Ross
> Davitt, Lalley, Dey & McHale, PC
> 1971 Beltine Ave., Suite 106
> Grand Rapids, MI 49525
> kristen.ross@dldmlaw.com
>
> */s/ John Cella*
> John Cella (DC Bar No. 1035356)