UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CLEAN LABEL PROJECT FOUNDATION<br><br>Plaintiff,<br><br>v.<br><br>GARDEN OF LIFE, LLC,<br><br>Defendant. | Case No. Case No. 20-cv-03229-RC<br><br>Hon. Rudolph Contreras |

# REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**Table of Contents**

Page

INTRODUCTION ...........................................................................................................................1

I. Plaintiff Lacks Article III Standing Because It Has Not Alleged Injury-In-Fact. ...................................................................................................................2

II. Enforcing the CPPA In the Manner Urged By Plaintiff Would Violate Defendant's First Amendment Right to Freedom of Speech. ................................5

    A. Plaintiff Seeks To Impose A Content-Based Restriction On Non-Commercial Speech That Does Not Satisfy Strict Scrutiny. .......................7

    B. Plaintiff's Proposed Limitation On Defendant's Speech Also fails To Satisfy *Central Hudson* and *Zauderer*. ....................................................9

III. The Complaint Should Be Dismissed Under The Doctrine Of Primary Jurisdiction. ..........................................................................................................11

IV. CONCLUSION....................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allnet Commc'n Serv., Inc. v. Nat'l Exch. Carrier Ass'n*,
  965 F.2d 1118 (D.C. Cir. 1992) ................................................................................. 13

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
  140 S. Ct. 2335 (2020) ..................................................................................... 1, 7, 8

*Beyond Pesticides v. Dr Pepper Snapple Grp., Inc.*,
  No. CV 17-1431, 2019 WL 2744685 (D.D.C. July 1, 2019) ....................................... 4, 5

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
  447 U.S. 557 (1980) ............................................................................... 1, 9, 10, 11

*Educ. v. Dep't of Educ.*,
  396 F.3d 1152 (D.C. Cir. 2005) ..................................................................................... 2

*Env't Working Grp. v. U.S. Food & Drug Admin.*,
  301 F. Supp. 3d 165 (D.D.C. 2018) ........................................................................... 1, 2

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ......................................................................................... 3

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .................................................................................................... 10

*Grayson v. AT&T Corp.*,
  15 A.3d 219 (D.C. 2011) ............................................................................................ 4, 5

*Int'l Outdoor, Inc. v. City of Troy, Mich.*,
  974 F.3d 690 (6th Cir. 2020) ...................................................................................... 7, 8

*Kimberly-Clark Corp. v. D.C.*,
  286 F. Supp. 3d 128 (D.C. Cir. 2017) ........................................................................... 11

*Nat'l Treas. Employees Union v. United States*,
  101 F.3d 1423 (D.C.Cir.1996) ......................................................................................... 3

*Nike, Inc. v. Kasky*,
  539 U.S. 654 (2003) ................................................................................................ 7, 10

*Pearson v. Shalala*,
  164 F.3d 650 (D.C. Cir. 1999) ...................................................................................... 10

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ................................................................................................................7

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .............................................................................................................7, 8

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..........................................................................................................1, 4

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967) ................................................................................................................10

*Turlock Irrigation Dist. v. FERC*,
    786 F.3d 18 (D.C. Cir. 2015) .....................................................................................................2

*Zauderer v. Office of Disciplinary Counsel*,
    471 U.S. 626 (1985) ............................................................................................................9, 11

**Statutes**

District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code
    § 28-3901 *et seq* ............................................................................................................ *passim*

D.C. Code § 28-3905(k)(1)(c) .............................................................................................................4

Consumer Protection Amendment Act of 2012 ..................................................................................5

**Other Authorities**

U.S. Const. amend. I ................................................................................................................ *passim*

U.S. Const. art. III, § 2 ............................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(1) .......................................................................................................................1

Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party
    Standing*, 113 HARV. L. REV. 1321, 1328 (2000) ...................................................................6

**INTRODUCTION**

Plaintiff argues that, by virtue of its mission to bring truthful information to consumers, it has standing to sue under the CPPA "*whenever untruth enters the marketplace.*" Opp. at 10 (emphasis added). The startling overbreadth of that assertion demonstrates just how far removed Plaintiff Clean Label Project Foundation is from having Article III standing to bring this lawsuit. It has not even asserted a "perceptible impairment" of its ability to provide services or an "actual inhibition of daily operations" attributable to Defendant's conduct, as is required. Opp. at 5-6; *Env't Working Grp. v. U.S. Food & Drug Admin.*, 301 F. Supp. 3d 165, 170 (D.D.C. 2018). Indeed, Plaintiff did not even purchase the Products. Opp. at 6 n.7. Its main argument is that it has *statutory* standing, but as the Supreme Court held in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016), that is not a substitute for the injury-in-fact requirement of Article III. Mot. at 11. The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of standing.

The restriction on Defendant's speech that Plaintiff seeks to impose by this lawsuit is no less breathtaking, and no less unconstitutional. Plaintiff seeks to regulate Garden of Life's ability to describe its own business philosophy, on its own website, based on non-public standards of product purity, which Plaintiff has invented out of whole cloth and now seeks to enforce by means of a strict liability statute, in its capacity as a "private attorney general," even though it was not injured by the speech at issue. Mot. at 13-16. All of this, and Plaintiff nonetheless argues that its efforts should be subject to *no constitutional scrutiny at all*. Opp. at 12-14. That is incorrect. The proposed restriction is subject to strict scrutiny as a content-based regulation of non-commercial speech. Mot. at 12, 13; *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020). At a minimum, it is subject to intermediate scrutiny under *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562-64 (1980). Mot. at 13. Plaintiff has not even attempted to articulate why either of these tests is satisfied. Opp. at

1

12-19. The Complaint should be dismissed as seeking to violate Garden of Life's First Amendment right to freedom of speech.

Plaintiff also concedes that federal regulatory agencies are responsible for both the permissible levels of the substances in this case, and the disclosure of them, i.e. "*when to be silent on the presence of toxicants and when to acknowledge the presence of toxicants.*" Opp. at 23-24. (emphasis added). The Court should therefore decline to hear this case under the doctrine of primary jurisdiction. Mot. at 20-24. Plaintiff argues that the Court can simply rule on whether the speech is misleading (Opp. at 21), but that is not possible in light of Plaintiff's theory of the case. That is, the only reason Plaintiff alleges that the speech is misleading is because the supposed levels of contaminants is unsafe. The regulatory agencies have held that these same levels are *not* unsafe, and thus Plaintiff is asking the Court to reach a different conclusion. The Court should decline Plaintiff's invitation to supplant the regulatory agencies that are already considering these exact issues on an ongoing basis.

I.  **Plaintiff Lacks Article III Standing Because It Has Not Alleged Injury-In-Fact.**

Plaintiff concedes that it must have standing under Article III of the Constitution in order to proceed with this litigation. Opp. at 3 ("In examining Article III standing, Plaintiff agrees that it must show that it has suffered an injury-in-fact."). Yet it makes *no showing* that it experienced the type of injury necessary for organizational Article III standing. It shows neither a "perceptible impairment" of its ability to provide services nor an "actual inhibition of daily operations" attributable to Defendant's conduct. *See e.g., Env't Working Grp. v. U.S. Food & Drug Admin.*, 301 F. Supp. 3d 165, 170 (D.D.C. 2018); *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015); *Ctr. for Law + Educ. v. Dep't of Educ.,* 396 F.3d 1152, 1162 n.4

(D.C. Cir. 2005).[1]  It does not even argue that it purchased the Products, noting only that it "requested and authorized" the purchase without any reference to who supplied the funds for the purchases, initiated the transactions, or received (much less consumed) the goods.  Opp. at 6 n.7.  Instead, Plaintiff only argues that its *mission*—to "educate consumers with regard to food labeling truth and transparency, allowing them to make data-based decisions"—was somehow harmed because Defendant's statements "impede[] the ability of D.C. consumers to make such educated data-based decisions."  Opp. at 5, 6.

That sort of abstract injury is not enough, and it has been rejected in the cases above.  In *Center for Law + Education*, for example, two advocacy groups challenged the composition of a committee assembled by the Department of Education to propose regulations to implement the No Child Left Behind Act, on the basis that the committee did not adequately represent parents' and students' interests.  96 F.3d at 1161–62.  The D.C. Circuit affirmed the District Court's dismissal for lack of the standing on the basis of no injury-in-fact, noting that "'*[C]onflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing*'" and "'*[f]rustration of an organization's objectives is the type of abstract concern that does not impart standing.*'"  *Id*. at 1161-62 (emphases added) (quoting *Nat'l Treas. Employees Union v. United States,* 101 F.3d 1423, 1429 (D.C.Cir.1996)).  That is the only injury that Plaintiff asserts here, and it should be rejected for the same reason. *See also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 921 (D.C. Cir. 2015) ("FWW has alleged nothing more than an abstract injury to its interests that is insufficient to support standing.").

---

[1] Plaintiff tries to distinguish these case on their facts.  Opp. at 5 (attempting to distinguish *Environmental Working Group* because the organization's allegations "were of past injury, rather than real or immediate injury"); *id*. at 6 (attempting to distinguish *Center for Law + Education* because "the No Child Left Behind Act is void of any reference to organizational interests.  Thus the concern of the organization was procedurally abstract.").  These supposed distinctions are immaterial.  The cases are cited in the Motion because they reflect the governing standard––organizational standing requires perceptible impairment in the form of inhibition of daily operations—which Plaintiff has not met in this case.

Perhaps aware of this, Plaintiff also argues that it has Article III standing because it satisfies the *statutory* criteria for standing under the CPPA. Opp. at 9-12. But that argument—that a statute can create Article III standing where it did not exist otherwise—was rejected by the U.S. Supreme Court in *Spokeo, Inc. v. Robins*, where the Court explained that "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." 136 S. Ct. 1540, 1547-48 (2016). What is true of Congress is *a fortiori* true of the D.C. City Council. It is therefore no surprise that Plaintiff cites *zero* federal cases in support of its standing argument.

Indeed, as set forth in Defendant's Motion, Plaintiff's "statutory-Article-III-standing" argument has been rejected by another Court in this District, on similar facts. Mot. at 10; *Beyond Pesticides v. Dr Pepper Snapple Grp., Inc.*, No. CV 17-1431, 2019 WL 2744685 (D.D.C. July 1, 2019) (rejecting the argument that organizational plaintiff had standing under D.C. Code § 28-3905(k)(1)(c) because "Article III standing requires a concrete injury *even in the context of a statutory violation*") (quoting *Spokeo*, 136 S. Ct. at 1547-49). Plaintiff tries to distinguish *Beyond Pesticides* based on factual irrelevancies such as the number of tests performed by the plaintiff in that case, and the presence of an "all natural" claim. Opp. at 7-8. These attempts fail. What matters for purpose of Article III standing is not the number of tests performed or the content of the alleged false advertising but that *Beyond Pesticides*—like this case—involved a supposed non-profit organization asserting that the CPPA gave it standing to sue despite the fact that it had not been injured. The *Beyond Pesticides* court rejected that argument under *Spokeo*. The same result follows here.

Plaintiff argues that although *Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. 2011), confirms the D.C. Court of Appeals' longstanding practice of applying Article III standing

requirements, that policy was "overhauled" by the Consumer Protection Amendment Act of 2012. Opp. at 4 (citing *Bimbo Bakeries*, 2015 D.C. Super. Lexis. 5 No. 2013 CA 006548 B 2015). But the case cited, *Bimbo Bakeries*, is not binding in this federal court, which is bound by (and indeed, derives its authority from) Article III. Nor is it persuasive because, as the decision in *Bimbo Bakeries* itself notes, the 2012 amendments "did not overrule the *Grayson* holding," but rather provided "the courts with a variety of ways to consider standing options that satisfy the *prudential* standing principles for non-profit and public interest organizations acting as private attorneys general." *Bimbo Bakeries*, 2015 D.C. Super. Lexis. 5 No. 2013 CA 006548 B 2015) at *7. Accordingly, both the latest decision from the D.C. Court of Appeals (*Grayson*) and the decisions of courts in this District (*Beyond Pesticides*) support application of Article III standing in this case, and refute the idea that Plaintiff has satisfied it because of changes to the CPPA.

Lastly, if there were any doubt that Plaintiff's claim should be dismissed for lack of Article III standing, it evaporates when one considers the awesome scope of the activity that Plaintiff asserts confers it with standing. *Viz.*, Plaintiff alleges that it has standing to sue under the CPPA "*whenever untruth enters the marketplace*." (Opp. at 10) (emphasis added). This theory, which in practice would mean that Plaintiff has standing whenever *it says* that "untruth has entered the marketplace," would render Article III meaningless. Defendant therefore requests that, consistent with Article III and precedents interpreting it, the Court dismiss the case with prejudice for lack of standing.

II. **Enforcing the CPPA In the Manner Urged By Plaintiff Would Violate Defendant's First Amendment Right to Freedom of Speech.**

What Plaintiff is attempting to do in this case is to legislate what can and cannot be said by Garden of Life, about itself, on the "about us" page of its own website, according to unspecified standards of purity that Plaintiff unilaterally invented. If implemented by this Court

5

under the auspices of the CPPA, this would be a purely content-based limitation on Defendant's non-commercial speech. Because it does not satisfy strict or even intermediate scrutiny, the Complaint should be dismissed as an impermissible attempt to abridge Garden of Life's First Amendment right to freedom of speech. Mot. at 12-17.

Plaintiff's primary argument in opposition to Defendant's First Amendment challenge is that it has brought a claim under a valid statute, and so the "the only question to be answered is whether Plaintiff has met the elements of the D.C. CPPA". Opp. at 2; *see also id*. at 13, 17, 18.

That is not how constitutional law works. Defendant's argument is not that the CPPA is facially invalid. It is that, if the Court applies the CPPA in the way that Plaintiff seeks, *i.e.*, to limit the speech Plaintiff challenges in this case on the basis of Plaintiff's allegations, the resulting Order will violate Defendant's First Amendment right to free speech. Mot. at 12. This is a well-recognized form of constitutional challenge, and in fact numerous seminal free-speech cases were framed in this manner. In *New York Times v. Sullivan*, for example, the Plaintiff sued the Times under Alabama's defamation law on the basis that it had printed false statements about him. 376 U.S. 254 (1964). The Times did not argue that Alabama's defamation law was entirely invalid; it argued (and the Supreme Court agreed) that the law could not constitutionally be applied to it in manner urged by the plaintiff. *Id*. at 268. *See also* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1328 (2000) ("As-applied challenges are the basic building blocks of constitutional adjudication."). The question in this case is *not*, as Plaintiff repeatedly argues, merely whether Plaintiff can show a violation of the CPPA. (Opp. at 2, 13, 17, 18). It is whether, if the Court were to apply the CPPA in the manner sought by Plaintiff, the resulting limitation on Defendant's speech would

violate its First Amendment right to freedom of speech. The answer is yes, under any possible form of constitutional scrutiny.

> **A. Plaintiff Seeks To Impose A Content-Based Restriction On Non-Commercial Speech That Does Not Satisfy Strict Scrutiny.**

Plaintiff admits that content-based limitations are subject to strict scrutiny, even where the speech in question is commercial speech. Opp. at n. 16 (noting that *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020), *Int'l Outdoor, Inc. v. City of Troy, Mich.*, 974 F.3d 690, 707-08 (6th Cir. 2020), and *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011), all apply strict scrutiny to commercial speech). Plaintiff also agrees that commercial speech "requires . . . propos[ing] a commercial transaction." Opp. at 16. And, it accepts the principle that First Amendment protection extends to political, social, economic, education and religious ends, which cannot normally be restricted by the State without satisfying strict scrutiny. Opp. at 12 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). Nonetheless, Plaintiff argues that strict scrutiny should not apply in this case because (1) Defendant has not challenged the constitutionality of the CPPA itself, and (2) the challenged speech is commercial.

These arguments fail. The first argument is addressed above, and it misses the point that Defendant's challenge is to the way in which Plaintiff proposes that the Court enforce the statute, not to the statute itself. With respect to commercial speech, Plaintiff's only argument is that "the very point and purpose of Defendant's website is to facilitate sales and promotion of its products." Opp. at 16. That proves too much. At some level, all businesses have an interest in facilitating sales and promoting products, but that does not mean that all speech made by businesses is commercial speech. If it were thus, there would be no need to analyze speech at all; one could merely look to the identity of the speaker. That is not the law. In *Nike, Inc. v. Kasky*, 539 U.S. 654 (2003), for example, the Supreme Court did not simply assume that Nike's

7

speech was commercial speech because Nike was a for-profit company, but rather considered the substance and content of the statements themselves.

When that exercise is done in this case, one is left with statements about Garden of Life's business philosophy, made on the "about us" page of the Garden of Life website. Mot. at 13. Plaintiff does not dispute this, does not show any statement that proposes a transaction, and does not argue that any of the challenged statements even appears on a page from which a purchase can be made. Opp. at 16 (admitting that the challenged statements are from the "about us" page).[2] Indeed, Plaintiff describes Defendant's speech as educational, noting that "Defendant's website *attempts [to] educate* on 'the Science of Whole Food' *explaining* that how the body was made to process foods and which foods have the ability to 'impact and empower extraordinary health.'" Opp. at 8 (emphasis added). The speech is therefore not commercial speech, even according to Plaintiff, and the proposed limitation on it is subject to strict scrutiny.

Even if the speech is considered commercial speech, strict scrutiny still applies because the restriction is content-based. *Barr,* 140 S. Ct. at 2346; *International Outdoor, Inc.*, 974 F.3d at 707-08; *Sorrell*, 564 U.S. at 565 (2011). Plaintiff concedes the principle, as noted above, and makes no argument that the proposed restriction is content-neutral. Instead, it argues that strict scrutiny cannot apply because Defendant has not challenged the validity of the statute itself. Opp. at 13 (asserting that "Defendant is arguing that Plaintiff is misapplying a valid statute.") That argument misses the mark because, as explained above, Defendant is arguing that, if the Court were to apply the CPPA in the manner sought by Plaintiff—if it were to grant, for example, the requested "injunction to halt Garden of Life's false and misleading marketing and

---

[2] Plaintiff argues that it is "irrational" to consider whether Defendant's packaging is not proposing a commercial transaction. Opp. at 16. But the section of the Complaint that lists the challenged claims, entitled "Garden of Life's Marketing Is Unconscionably Misleading and Omits Materials Facts," does not include any label statements. Compl. ¶ 88-96.

8

sale of Garden of Life's Products" (Compl. ¶ 35)—Defendant's First Amendment right to freedom of speech would be violated.

Plaintiff makes no argument that, if strict scrutiny applies, the proposed restriction meets that standard. Accordingly, because strict scrutiny applies to Plaintiff's proposed content-based regulation on non-commercial speech, and Plaintiff has failed to articulate why it is narrowly tailored to achieve a compelling government interest, the Complaint should be dismissed.

> B. **Plaintiff's Proposed Limitation On Defendant's Speech Also fails To Satisfy *Central Hudson* and *Zauderer*.**

As set forth in the Motion, even if the challenged speech is considered to be commercial, *and* the proposed restriction is considered content-neutral, Plaintiff still must show that (1) the asserted governmental interest is substantial, (2) the restriction directly and materially advances that interest, and (3) the restriction is narrowly tailored. Mot. at 13 (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562-64 (1980)). Alternately, even if the lawsuit is viewed as an effort to compel speech in the form of disclosures or unspecified "corrective advertising," Plaintiff still must show that the compelled disclosures are (i) purely factual and uncontroversial; (ii) reasonably related to a substantial government interest, and (iii) neither unjustified nor unduly burdensome. *Id*. (citing *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985)).

In its Opposition, Plaintiff makes no effort to show how either of these tests is met, thereby conceding that its proposed restriction fails any potential level of constitutional scrutiny. *See* Opp. at 14 (reciting the *Central Hudson* test but arguing that it does not apply); *id*. at 14-15 (arguing that *Zauderer* should apply "if the Court acknowledges Defendant's First Amendment argument," but making no argument that the requirements are satisfied). Instead, Plaintiff argues that no constitutional scrutiny is appropriate here because (1) the statute itself is not invalid, and

(2) Plaintiff has alleged that the speech in question is misleading. Opp. at 14, 15. The former argument is incorrect, as discussed above, because Defendant's argument is a routine constitutional challenge, *i.e.*, that if the CPPA is enforced in the manner that Plaintiff seeks to enforce it, Defendant's First Amendment rights will be violated.

The latter argument also fails. Plaintiff proposes that a company (i) cannot speak about its own philosophy, (ii) on the "about us" page of its own website, unless (iii) it meets the standards that are not published and are different from any existing governmental standards. Such a sweeping limitation on speech cannot be imposed under the auspices of a mere allegation that the statements are "misleading."

As explained in Defendant's Motion, the Supreme Court has in various contexts provided constitutional protections even for speech that is potentially misleading. Mot. at 14 (citing *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 340 (1974); *Time, Inc. v. Hill*, 385 U.S. 374, 387 (1967). Plaintiff brushes these cases aside as being in the defamation context and therefore "antithetical" (Opp. at 14) but misunderstands their relevance. The Supreme Court in those cases identified the potential chilling effect on desirable speech as a reason to extend First Amendment protection even to potentially misleading speech. *See Nike, Inc. v. Kasky*, 539 U.S. 654, 664, (2003) (Stevens, J. concurring) ("The interest in protecting [knowledgeable persons participating in debates] from the chilling effect of the prospect of expensive litigation is therefore also a matter of great importance.") (Stevens, J. concurring). The same chilling effect is at play here, and the same protection should be extended. Mot. at 15.

In fact, the D.C. Circuit has already applied *Central Hudson* to potentially misleading commercial speech in the context of health claims about dietary supplements. *See Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999) ("Under *Central Hudson*, we are obliged to evaluate a

government scheme to regulate *potentially misleading commercial speech* by applying a three-part test.") In that case, the Court of Appeals rejected an FDA rule that would have banned health claims on dietary supplements that were not supported by "significant scientific evidence," in favor of a disclaimer-based regime, because there was no reasonable fit between the government's interest and the steps it had taken to advance them. *Id*. at 655. *See also Kimberly-Clark Corp. v. D.C.*, 286 F. Supp. 3d 128, 144 (D.C. Cir. 2017) (applying *Central Hudson* to allegation that wet wipe products were falsely advertised as "flushable" because "potentially misleading speech, like other commercial speech, is still subject to *Central Hudson*.").

Accordingly, the proposed limitation must satisfy *Central Hudson* or, at a bare minimum, *Zauderer*. Plaintiff has declined to articulate any argument as to how either of those tests is satisfied, and accordingly Plaintiff has failed to carry its burden to show why the proposed limitation does not violate Garden of Life's First Amendment right to freedom of speech.

**III.     The Complaint Should Be Dismissed Under The Doctrine Of Primary Jurisdiction.**

Plaintiff has not challenged the portion of Defendant's motion setting out the extensive regulatory framework that governs the presence of the contaminants that are the subject of the Complaint in the food supply. Opp. at 20-24 (conceding that the substances in questions are regulated by the FDA and FTC). More than that, Plaintiff specifically concedes that the permissible levels of the substances alleged in their Complaint are governed by the FDA and EPA. Opp. at 23 ("*Federal agencies have addressed when to be silent on the presence of toxicants and when to acknowledge the presence of toxicants*"); *id.* at 24 (describing "whether the levels of contaminants present in D's Products are allowable" as "*an issue Plaintiff acknowledges has already been determined by federal agencies.*") (emphases added). As a result, at a minimum, Plaintiff's claim should be dismissed to the extent it alleges a failure to

disclose,³ because the Parties agree that disclosure is properly the province of federal agencies, and Plaintiff now asserts that its case is only about affirmative statements. *See* Opp. at 23 ("Defendant has not pointed to a single rule or regulation by a federal agency that addresses when an entity may *affirmatively state* there are no toxicants when there are.")

But furthermore, it is not correct to assert, as Plaintiff does, that the Court can simply rule on whether the challenged statements are misleading without reference to the safety standards that have been promulgated by the regulating agencies. Opp. at 23 ("Plaintiff's Complaint merely asks the Court to determine whether Defendant has violated a statute dealing with misleading or false advertising practices"). This is because what Plaintiff alleges in the Complaint is that Defendant's statements are misleading *because of* safety and health concerns related to the presence of trace amounts of heavy metals, BPA, or pesticides in the Products. The Complaint is replete with such allegations. *See, e.g.*, Compl. ¶ 26 (products contains substances that "are *extremely dangerous* to the fetus); *id.* ¶ 28 (products "contain toxins and contaminants that are *by their very nature damaging* to the fetus); *id.* ¶¶ 48-68 (cataloguing the alleged "*dangers* of heavy metals, lead, cadmium and mercury"); *id.* ¶¶ 69-73 (cataloguing the alleged "*dangers* of BPA"); *id.* ¶¶ 74-79 (summarizing the alleged "*dangers* of pesticides") (all emphases added). These allegations are supported by citations to purported research articles from various scientific journals and organizations. Compl. at n.10 - n.26.

In response, Defendant will argue, *inter alia*, that there are no safety or health concerns at the levels of the substances Plaintiff alleges are present in the products. Mot. at 20 (comparing mercury level of 23 parts *per billion* alleged in Complaint with FDA guidelines encouraging

---

³ This is a substantial component of the Complaint. *See, e.g.*, Compl. ¶ 32 (challenging, *inter alia*, Garden of Life's tendency . . . to omit); *id.* ¶ 96 (alleging that the presense of toxins are not "listed, labeled, or advertised); *id.* ¶ 116 (alleging, *inter alia*, misleading "omissions"); ¶ 124 (alleging that Garden of Life advertising "omits facts"); id. ¶ 126 (omissions of material fact)

12

women who are pregnant to consume fish containing 15 parts *per million* of mercury up to three times per week). Defendant will point out that FDA's conclusions are based on its decades-long studies of the available scientific literature, that the levels allegedly present in the Products are below any levels-of-concern identified by FDA, and consequently there are no safety concerns that would render the challenged statements misleading.

This means that, in order to determine whether the statements are misleading, the Court will be asked to determine whether the presence of the alleged levels of contaminants renders the Products unsafe or unhealthy, as Plaintiff alleges, or whether it does not, as FDA and EPA have found, and as Defendant will argue. There can be no dispute that the FDA and EPA are better equipped to determine issues related to safety and disclosures regarding the presence of heavy metals, BPA, and pesticides in the food supply, *because they have already done so*. Mot. at 17-21. In the parlance of the factors for determining primary jurisdiction, the each of these issues raised is not "within the conventional expertise of judges" but is rather "particularly within the agency's discretion [and] requires the exercise of agency expertise." *Allnet Commc'n Serv., Inc. v. Nat'l Exch. Carrier Ass'n*, 965 F.2d 1118, 1120 (D.C. Cir. 1992). Plaintiff is also conspicuously silent regarding the concomitant risk that, if the court proceeds, there will be inconsistent rulings, which is particularly acute because Plaintiff has sued at least *fourteen* different companies on similar grounds. Mot. at 22.

## IV. CONCLUSION

This case cannot proceed. Plaintiff Clean Label Project Foundation proposes that a company (i) cannot speak about its own philosophy, (ii) on the "about us" page of its own website, unless (iii) it meets the standards that are not published and are different from any existing governmental standards, which (iv) are unilaterally imposed by an organization that has not itself been injured by the speech, but nonetheless (v) purports to act as a "private attorney

general" to impose liability (vi) under a strict liability statute.  As detailed above, Plaintiff lacks Article III standing, unjustifiably seeks to restrict Defendant's free speech rights, and asks this Court to supplant the expertise of federal agencies in regulating the Products.  Defendant respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: December 21, 2020          Respectfully submitted,

*/s/ Lori Leskin*

Lori B. Leskin (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Fax: (212) 836-8689
Lori.Leskin@arnoldporter.com

Trenton H. Norris (D.C. Bar No. 442081)
(application for admission forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
(415) 471-3100
Fax: (415) 471-3400
Trent.Norris@arnoldporter.com

*Counsel for Defendant Garden of Life, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of December, 2020, a true copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

/s/ *Lori Leskin*
Lori Leskin