UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-3229 (RC) |
| | : | | |
| v. | : | Re Document No.: | 7 |
| | : | | |
| GARDEN OF LIFE, LLC, | : | | |
| | : | | |
| Defendant. | : | | |

# MEMORANDUM OPINION

### Granting Defendant Garden of Life, LLC's Motion To Dismiss

## I.  INTRODUCTION

Plaintiff Clean Label Project Foundation ("CLP"), a non-profit organization, has brought this action against Garden of Life, LLC ("Garden of Life"), a provider of branded supplements, alleging that Garden of Life engaged in unlawful trade practices in violation of the District of Columbia Consumer Protection Procedures Act ("CPPA").  Defendant Garden of Life has moved to dismiss this suit pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  It argues that CLP lacks Article III standing, that this action infringes on Garden of Life's freedom of speech, and that the suit also runs afoul of the primary jurisdiction doctrine, which would entrust questions of this nature to federal and state regulators.  For the reasons discussed below, the Court concludes that because CLP has not alleged an injury in fact it lacks standing and, thus, the complaint must be dismissed.

## II. FACTUAL BACKGROUND

Defendant Garden of Life is a dietary supplement company that sells prenatal vitamins, including the following product lines: Garden of Life Vitamin Code Raw Prenatal (180ct), Garden of Life MyKind Organics Prenatal Multi-Certified Organic Whole Food (90ct), Garden of Life Dr. Formulated Probiotics-Once Daily Prenatal (30ct), Garden of Life Oceans Mom Prenatal DHA (30ct), Garden of Life MyKind Organics Prenatal Once Daily (30ct), Garden of Life MyKind Organics Prenatal Once Daily (90ct), and Garden of Life MyKind Organics Prenatal (30ct) (collectively, "the Products"). *See* Compl. ¶ 24, ECF No. 1-1. These products are sold to District of Columbia consumers through retail stores and online marketplaces. *Id.* ¶¶ 22, 44. CLP alleges that in order to capture the market for prenatal vitamins and supplements, Garden of Life marketed the Products with descriptions such as "Clean Nourishment for You & Your Baby Before, During & After Pregnancy," *id.* ¶ 21, "Clean is healthy," *id.* ¶ 88, and promises customers that it is "uncompromising about your health," *id.* ¶ 90.

CLP is a non-profit public interest organization that describes its mission as "educat[ing] the public and enabl[ing] consumers to make informed shopping choices," *id.* ¶ 37, part of which includes "bring[ing] truth and transparency to food and consumer products labeling," *id.* ¶ 138. To further this mission, in the fall of 2018 CLP caused the purchase of the Products and had an accredited third-party chemistry laboratory perform quantitative testing. *Id.* ¶¶ 25, 100–102. The results found that the Products "contained quantifiable levels of heavy metals as well as detectable amounts of WHO Class II Pesticides and BPA," substances that CLP asserts "are extremely dangerous to a fetus." *Id.* ¶ 25–26. CLP contends that in light of these findings, Garden of Life mislabeled, falsely advertised, and adulterated the products, causing ongoing harm to D.C. consumers. *Id.* 112–120.

CLP has now brought suit pursuant to the CPPA, D.C. Code § 28-3901 *et seq*. The CPPA permits nonprofit organizations to bring actions "on behalf of itself or any of its members, or on any such behalf and on behalf of the general public," and also allows "public interest organization[s]" to bring actions "on behalf of the interests of a consumer or a class of consumers." D.C. Code § 28-3905(k)(1)(C), (D). CLP alleges that Garden of Life engaged in unlawful trade practices under the CPPA when it marketed and sold prenatal vitamin products in a manner that misled consumers into believing that the products were free of contaminants and superior to competing products, when in fact they were contaminated with toxic heavy metals, pesticides, and BPA. Compl. ¶¶ 123–31 (describing violation of D.C. Code § 28-3904). CLP also alleges that the presence of these contaminants, which are "injurious to health," render Garden of Life's prenatal vitamins "adulterated" in violation of D.C. Code § 48-103. *Id.* ¶ 132.

CLP asks the Court for the following relief: (1) a declaration that Garden of Life's conduct is in violation of the CPPA; (2) an order enjoining this conduct; (3) an order requiring Garden of Life "to provide corrective advertising to the residents of the District of Columbia that restores consumers"; (4) an order granting CLP's "costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law"; and (5) punitive damages and any further relief deemed just and proper by the Court. Compl. at 28.

### III. PROCEDURAL HISTORY

CLP filed this action in the Superior Court for the District of Columbia on August 25, 2020. The case was removed to this Court on November 9, 2020. Notice of Removal, ECF No. 1. That same month, Garden of Life filed a motion to dismiss the complaint. *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 7. The motion is opposed by CLP. *See* Pl.'s Resp. in Opp'n

3

to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 10.  Garden of Life has also filed a reply. *See* Def.'s Reply in Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply"), ECF No. 11.  The motion is now ripe for consideration.[1]

### IV.  LEGAL STANDARD[2]

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004).  On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

A court resolving a Rule 12(b)(1) motion must "accept[ ] the factual allegations in the complaint as true," *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005), and "must construe the complaint in favor of the complaining party," *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  However, because subject matter jurisdiction focuses on the court's power to even hear the claim, a court is to apply closer scrutiny when resolving a Rule 12(b)(1) motion compared to a Rule 12(b)(6) motion for failure to state a claim.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (explaining that, in the context of standing analysis under the Rule 12(b)(1) legal standard, "we do not assume the truth of legal conclusions,

---

[1] The Court notes that, in contrast to a recent similar case involving CLP in this District, neither party has asked this Court to remand to the D.C. Superior Court.  *See Clean Label Project Found. v. Now Health Grp., Inc.*, 21-cv-0011, 2021 WL 2809106, at *9 (D.D.C. July 6, 2021) (remanding to state court after finding a lack of subject matter jurisdiction and denying the motion to dismiss as moot).

[2] Because the Court will grant dismissal on the basis of Garden of Life's motion to dismiss for lack of subject matter jurisdiction, it need not lay out the relevant standard governing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

nor do we accept inferences that are unsupported by the facts set out in the complaint") (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)); *see also Jathoul v. Clinton*, 880 F. Supp. 2d 168, 170 (D.D.C. 2012) ("'[T]he [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim.") (quoting *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)). For this reason, "[w]here necessary to resolve a jurisdictional challenge under Rule 12(b)(1), 'the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

## V. ANALYSIS

Garden of Life has moved to dismiss the complaint on two grounds. It argues first a lack of subject matter jurisdiction, claiming that CLP has not properly alleged Article III standing. Def.'s Mot. at 9–11. Garden of Life also contends that CLP does not present a claim on which relief can be granted, asserting that the application of the CPPA here would violate Garden of Life's freedom of speech, as well as run afoul of the doctrine of primary jurisdiction. *Id.* at 12–22. For the reasons discussed below, the Court will grant Garden of Life's motion to dismiss for lack of subject matter jurisdiction.

The Court begins, as it must, with the jurisdictional question: whether it has subject matter jurisdiction to review this action. This requires that CLP have Article III standing to bring this suit. *See* U.S. Const. art. III, § 2 (limiting federal courts' jurisdiction to "Cases" and "Controversies"); *see also Hancock v. Urb. Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016) (explaining that "[o]ne 'essential and unchanging' component of federal court jurisdiction is the

5

'requirement that a litigant have standing to invoke the authority of a federal court'") (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).  CLP claims that it "has met all of the elements for organizational standing."  Pl.'s Opp'n at 1.  The Court disagrees.

1. Legal Standard

To establish the existence of a case or controversy, "the plaintiff 'must clearly . . . allege facts demonstrating' each element" of Article III standing.  *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoting *Warth*, 422 U.S. at 518); *see also Arpaio*, 797 F.3d at 19 ("The plaintiff bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing.") (citing *Lujan*, 504 U.S. at 561).  "To establish standing, a plaintiff must show (1) it has suffered a 'concrete and particularized' injury (2) that is 'fairly traceable to the challenged action of the defendant' and (3) that is 'likely' to be 'redressed by a favorable decision,' *i.e.,* a decision granting the plaintiff the relief it seeks."  *Elec. Priv. Info. Ctr. (EPIC) v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (quoting *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017)); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc*., 528 U.S. 167, 180–81 (2000).

Additionally, to satisfy Article III's requirements, the plaintiff's alleged "injury in fact" must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Friends of the Earth*, 528 U.S. at 180.  This means the asserted injury must be specific to the plaintiff, such that the plaintiff has "a personal stake in the outcome of the controversy."  *Warth*, 422 U.S. at 498; *see also Lujan*, 504 U.S. at 560 n.1 (noting that a defendant's alleged conduct must affect the plaintiff in a "personal and individual way").  Accordingly, it is not enough for a plaintiff to "rais[e] only a generally available grievance about government—claiming only harm to [it] and every citizen's interest in [the] proper application of

the Constitution and laws, and seeking relief that no more directly [or] tangibly benefits [the organization] than it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan*, 504 U.S. at 573–74).

"An organization . . . can assert standing on its own behalf, on behalf of its members or both." *Equal Rts. Ctr. v. Post Prop., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) (citing *Abigail All. for Better Access to Dev. Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006)). When an organization asserts standing on its own behalf, as CLP does here, courts "conduct the same inquiry as in the case of an individual: Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982) (quotation marks omitted)). This requires that the organization "show[] that a defendant's actions have 'perceptibly impaired' the organization's ability to provide services, such that there has been a 'concrete and demonstrable injury to the organization's activities—with [a] consequent drain on resources.'" *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, 78 F. Supp. 3d 208, 229 (D.D.C. 2015) (citing *Havens*, 455 U.S. at 379). Under this framework, a "mere setback" to an organization's "abstract social interests is not sufficient" to meet the standing requirement. *Equal Rts. Ctr.*, 633 F.3d at 1138.

2. Standing Analysis

CLP asserts that it has alleged organizational standing sufficient to survive Garden of Life's motion to dismiss. It contends, somewhat convolutedly, that it has organizational standing because Garden of Life's purportedly false and misleading statements about the Products interfered with CLP's overall educational mission, and also argues in the alternative that the

statutory violation it alleges under the CPPA is itself sufficient to constitute an injury in fact. Pl.'s Opp'n at 3–12.  Both arguments fall apart under close examination.

*a. CLP Fails to Establish Injury in Fact*

CLP's attempt to show a concrete injury sufficient to confer Article III standing flounders from the start.  As a refresher, the "central question" when determining organizational standing is "whether the plaintiff has suffered a 'concrete and demonstrable injury.'"  *Env't Working Grp. v. U.S. Food & Drug Admin.*, 301 F. Supp. 3d 165, 170–71 (D.D.C. 2018) (citing *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015)). This requirement is met when "the organization can demonstrate: (1) a direct conflict between the challenged conduct and the organization's mission, and (2) a consequent drain on the organization's resources resulting from this direct conflict."  *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 199–200 (D.D.C. 2015), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015) (citing *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011)).  Because CLP does not even attempt to meet the second prong of this test, it fails to meet its burden.

CLP argues that it has met the requirements of constitutional standing because Garden of Life caused injury to its overall mission of "educat[ing] customers with regard to food labeling truth and transparency" because the allegedly misleading statements in question "impeded the ability of D.C. consumers to make . . . educated data-based decisions."  Pl.'s Opp'n at 5–6; *see also id.* at 8 (stating that Garden of Life's purported misrepresentations "damage[d] the exact aim and mission of CLP's work").  Even assuming that this is sufficient to meet the first requirement and demonstrate that Garden of Life has indeed interfered with CLP's "core mission," *Food & Water Watch*, 79 F. Supp. 3d at 200, CLP offers *no* evidence of any concrete

harm that accrued to CLP as a result. This dooms its argument, for the D.C. Circuit has held that "conflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing,'" reasoning that "'[f]rustration of an organization's objectives is the type of abstract concern that does not impart standing.'" *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161–62 (quoting *Nat'l Treas. Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996)); *see also Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987) (requiring "more than allegations of damage to an interest in 'seeing' the law obeyed or a social goal furthered" to establish an injury in fact).

The second requirement for organizational standing mandates that CLP "allege that the defendant's conduct 'perceptibly impaired'" the organization's ability to carry out its activities or provide services in some manner. *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) (quoting *Equal Rts. Ctr.,* 633 F.3d at 1138–39). As already noted, CLP presents no argument in this regard.[3] Unlike other cases where organizational standing has been found, CLP does not claim that it suffered harm to its operations or ability to provide services as a result of Garden of Life's actions, such as by "increas[ing] the resources the group must devote to programs independent of its suit challenging the action." *Spann v. Colonial Vill., Inc.*, 899 F.2d

---

[3] CLP (perhaps wisely) also does not attempt to argue that it has standing due to its purchase of Garden of Life's prenatal products. While an economic injury "constitutes a distinct and palpable injury," *Ciba–Geigy Corp. v. EPA*, 801 F.2d 430, 438 n.10 (D.C. Cir. 1986) (quoting *Warth*, 422 U.S. at 501), "this Circuit does not recognize . . . self-inflicted harm as an injury in fact." *Beyond Pesticides v. Dr Pepper Snapple Grp., Inc.*, No. 17-cv-1431, 2019 WL 2744685, at *1 (D.D.C. July 1, 2019) (determining plaintiff lacked standing where plaintiff admitted "it purchased the products only to evaluate" the seller's claims that its product was all-natural) (internal quotations and citation omitted). Furthermore, it is altogether unclear if CLP actually purchased the goods in question or if the funds were supplied by another party, given the varying language used by CLP to describe the transactions at issue. *Compare* Pl.'s Opp'n at 6 n.7 (noting CLP only "requested and authorized" the purchases in question) *with id.* at 12 (stating that CLP "purchased the products for the purposes of testing for purity") (internal citations omitted).

24, 27–29 (D.C. Cir. 1990) (citing *Havens*, 455 U.S. at 379); *see, e.g., Abigail All.*, 469 F.3d at 132–33 (finding injury in fact where organizational plaintiff alleged that FDA policy "frustrated" its "counseling, referral, advocacy, and educational services"); *Action All. of Senior Citizens v. Heckler*, 789 F.2d 931, 936–39 (D.C. Cir. 1986) (finding injury in fact where organizations "alleged inhibition of their daily operations"); *Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*, 285 F. Supp. 3d 100, 102–03 (D.D.C. 2018) (finding injury in fact where plaintiff had to expend more resources on programmatic efforts to counteract defendant's misinformation regarding synthetic ingredients in food products). CLP fails to point to any concrete harm of this nature,[4] only reiterating that Garden of Life's purported misrepresentations were an attack on "the mission of the CLP" in an area in which it "has a long-standing focus." Pl.'s Opp'n at 9. But "no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem," an organization's abstract interest in an issue is insufficient to establish standing. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Accordingly, the Court concludes that based on the pleadings, CLP does not allege an injury in fact. And absent a concrete injury, CLP cannot proceed to federal court.

  b. *Reliance on the Statutory Requirements of the CPPA Cannot Remedy CLP's Failure to Establish Injury in Fact*

Perhaps recognizing the shortcomings of its first argument, CLP shifts gears to argue that it can in effect sidestep the constitutional standing requirement altogether. It asserts that the

---

[4] The Court also notes that while presumably CLP has expended resources on this lawsuit, a "diversion of resources to litigation or investigation in anticipation of litigation does not constitute an injury in fact sufficient to support standing." *Equal Rts. Ctr.*, 633 F.3d at 1140; *Fair Emp. Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994) (rejecting the notion that "the time and money that plaintiffs spend in bringing suit against a defendant would itself constitute a sufficient 'injury in fact,'" as "a circular position that would effectively abolish the requirement altogether").

CPPA "create[s] certain rights, the impairment of which could constitute an injury in fact." Pl.'s Opp'n at 5; *see also id.* at 11 (arguing that because Plaintiffs "have a statutory right to bring CPPA action . . . the deprivation of that right constitutes an injury in fact"). Garden of Life correctly takes issue with this "statutory-Article-III-standing" argument. Def.'s Reply at 4.

As the Court understands CLP's rather muddled argument, CLP claims that fulfilling the CPPA's statutory requirements is sufficient to create the concrete injury needed to establish constitutional standing. Pl.'s Opp'n at 5, 9–12. Not so. The Supreme Court has made it abundantly clear that "Article III standing requires a concrete injury *even in* the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1547–49 (emphasis added). This means that a plaintiff bringing a claim alleging an infringement of a statutorily conferred right—like CLP here— must still show evidence of an injury that "affect[ed] the plaintiff in a personal and individual way." *Id*. at 1543 (explaining that it "does not mean that a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"). Other courts in this District have recognized this rule in the context of the CPPA. *See, e.g., Hancock*, 830 F.3d at 514; *Beyond Pesticides*, 2019 WL 2744685, at *1; *see also Mann v. Bahi*, 251 F. Supp. 3d 112, 119 (D.D.C. 2017) ("D.C. law is clear that the CPPA is meant to extend as far as Article III's requirements will permit—but it can go no further than that.") (citing *Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 251–52 (D.C. 2013)).

Indeed, another court in this District recently examined this exact issue under the CPPA in a highly analogous case, and similarly concluded that the action could not proceed given the lack of a concrete injury. In *Beyond Pesticides v. Dr Pepper Snapple Grp, Inc.,* an anti-pesticide nonprofit sought to bring suit under the CPPA against a company that produces applesauce and

11

apple juice. *See Beyond Pesticides,* 2019 WL 2744685, at *1. The nonprofit alleged that the applesauce manufacturer mislead customers by advertising that its applesauce products were "all natural"— a statement the nonprofit claimed was false based on testing it conducted which found trace synthetic pesticide residue in the products. *Id.* The nonprofit plaintiff argued that it had constitutional standing because it met the statutory requirements to bring suit under D.C. Code § 28-3905(k)(1)(c) of the CPPA. *Id.* at *2. But the court disagreed, concluding that, "[s]imply put, the D.C. Council's 'role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *Spokeo,* 136 S. Ct. at 1547).[5] The same is true here. Absent a concrete injury, CLP lacks the required "irreducible constitutional minimum" to sue in federal court.[6]

---

[5] CLP attempts to differentiate this case from *Beyond Pesticides* based on minor factual discrepancies, such as the greater number of tests performed by CLP in this case and what it seems to contend is more egregious false advertising in the case at hand (*e.g.*, contrasting Garden of Life's statement that its Products provide "clean nourishment" compared to the "all natural" applesauce claim at issue in *Beyond Pesticides*—both highly similar assertions in the Court's estimation). Pl.'s Opp'n at 7–8. But neither distinction adequately refutes the key legal holding at issue: that Article III standing cannot rest solely on the fulfillment of the statutory provisions of the CPPA in the absence of a concrete injury.

[6] CLP argues that the 2013 amendments to the CPPA should change the Court's analysis. Pl.'s Opp'n at 3 ("Since the 2013 amendments to the CPPA took effect, courts have freely found standing for organizational plaintiffs."). This is unconvincing for a couple of reasons. First, the small handful of cases cited by CLP in support of this proposition are all D.C. Superior Court cases that rely on federal precedent that predates *Spokeo*. For example, CLP cites heavily to *The Nat. Consumers League v. Bimbo Bakeries USA*, a D.C. Superior Court case that held that the plaintiff could demonstrate an injury in fact by showing a deprivation of a statutory right under the CPPA to be free from improper trade practices. No. 2013 CA 006548 B, 2015 WL 1504745, at *3 (D.C. Super. Apr. 02, 2015) (quoting *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010)). Similarly, in *Organic Consumers Ass'n v. Gen. Mills, Inc.*, the only case CLP provides that was decided after *Spokeo*, the D.C. Superior Court again relied on cases premised on D.C. law and federal case law interpreting Article III requirements that predated *Spokeo*. *See* No. 2016 CA 6309 B, 2017 D.C. Super. LEXIS 4, *6 (July 6, 2017) (citing *Grayson v. AT & T Corp.*, 15 A.3d 219, 248–49 (D.C. 2011)). Second and most importantly, none of the cases cited by

To meet this constitutional minimum, CLP must do more than allege that Garden of Life has generally violated the CPPA by presenting misleading information—it must identify a concrete harm that accrued as a result. *See, e.g., Hancock,* 830 F.3d at 514 (holding that customers lacked standing to bring case against merchant who violated the CPPA by asking for their zip codes because customers alleged no attendant harm); *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 136 (D.D.C. 2010) (dismissing suit for lack of standing under the CPPA where organization did not claim manufacturer's "conduct harmed [plaintiff organization] or inhibited its activities"); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28–29 (D.D.C. 2007) (holding that plaintiff did not have standing to bring CPPA claim where plaintiff presented no injury in fact and alleged only generalized grievance against fast food restaurant for failure to warn consumers about the presence of trans fat in its food); *Ctr. for Sci. in the Pub. Int. v. Burger King Corp.*, 534 F. Supp. 2d 141, 143–44 (D.D.C. 2008) (same). As already discussed, *see supra* Section V.2.a, CLP has not alleged that it suffered a concrete, injury in fact as a result of Garden of Life's actions. Accordingly, CLP's failure to establish this element of standing remains fatal to this action.

## VI.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED.** An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 23, 2021                                        RUDOLPH CONTRERAS
                                                                                       United States District Judge

---

CLP are binding on this Court. It goes without saying that the Court must follow Supreme Court precedent on this issue over the opinions of the D.C. Superior Court in matters of the Court's very authority to hear cases.