**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

CLEAN LABEL PROJECT FOUNDATION,)
                                     )
           *Plaintiff,*         )
                                     )
v.                                  )         **Case No. <u>1:20-cv-03229-RC</u>**
                                     )
GARDEN OF LIFE LLC,         )
                                     )
          *Defendant.*       )
                                     )
_____)

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S</u>**

**<u>MOTION FOR RECONSIDERATION OF THE ORDER OF DISMISSAL, OR IN THE</u>**

**<u>ALTERNATIVE, REMAND TO D.C. SUPERIOR COURT</u>**

## TABLE OF CONTENTS

**BACKGROUND** ................................................................................................................ **6**

**LEGAL STANDARD** ...................................................................................................... **8**

**ANALYSIS** ......................................................................................................................... **9**

    I.    THE ANIMAL LEGAL DEF. FUND. DECISION EXPLAINED THAT THE D.C. CPPA'S STANDING REQUIREMENT DOES NOT REQUIRE A SHOWING OF INJURY-IN-FACT AND MODIFIES THE ARTICLE III STANDING REQUIREMENT, WHICH ENTITLES CLP TO REPRESENTATIONAL STANDING UNDER D.C. CODE § 28-3905(K)(1)(D) ............... 11

    II.    CLP MEETS THE SECTION (K)(1)(D) STATUTORY TEST UNDER *ANIMAL LEGAL DEFENSE FUND*. ...................................................................................................................... 19

    III.    FIRST AMENDMENT ARGUMENTS ARE PREMATURE ON A 12(B)(6) MOTION ................ 22

    IV.    PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY AND THIS COURT WILL NOT BE SUPPLANTING THE FDA OR EPA IN ADJUDICATING THE PLAINTIFF'S CLAIMS UNDER THE D.C. CPPA  25

    V.    A WORD ON SPOKEO, INC. V. ROBBINS, 136 S. CT. 1540 (2016) AS AN ERROR OF LAW IN LIGHT OF ANIMAL LEGAL DEF. FUND. ........................................................................ 27

    VI.    IF THIS COURT DECLINES TO EXERCISE JURISDICTION OVER THIS MATTER, WE ASK THAT THIS CASE BE REMANDED TO D.C. SUPERIOR COURT .................................... 28

**CONCLUSION** ............................................................................................................... **31**

**CERTIFICATE OF SERVICE** ................................................................................... **32**

# TABLE OF AUTHORITIES

## CASES

*Alliance for Natural Health U.S. v. Sebelius*, 786 F. Supp. 2d 1, 13 (D.D.C. 2011)................... 23

*Animal Legal Def. Fund. v. Hormel Foods Corp.*, No. 19-CV-0397, 2021 D.C. App. (D.C. Sept. 2, 2021) ..................................................................................................................... passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 22, 23

*Ass'n of Private Sector Colleges & Univs. v. Duncan*, 681 F.3d 427, 457 (D.C. Cir. 2012)........ 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 22

*Beyond Pesticides v. Dr Pepper Snapple Grp., Inc.*, No. 17-cv-1431, 2019 U.S. Dist. (D.D.C. July 1, 2019)............................................................................................................... 16

*Blue v. Fremont Inv. & Loan*, 584 F. Supp. 2d 10 (D.D.C. 2008)............................................... 27

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)............................................................... 28

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980).................... 23

*Clean Label Project Found. v. Nutraceutical Corp.*, No. 2020 CA 003754 B (D.C. Super. Ct. Jan. 25, 2021)............................................................................................................. 9, 10

*Clean Label Project Found. v. Panera, LLC*, No. 2019 CA 001898 B (D.C. Super. Ct. Oct. 11, 2019) ................................................................................................................. 9, 10, 26

*CLP v. Garden of Life*, No. 20-3229 (RC), 2021 U.S. Dist. Lexis 181649 (D.D.C. Sept. 23, 2021) .................................................................................................................... 11, 15, 19, 26

*District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 12 (D.C. 1993)........................................ 13

*District of Columbia v. Walters*, 319 A.2d 332 (D.C. 1974) ....................................................... 13

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)................................................................. 12, 17, 28

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)................................................................. 7

*Fraternal Order of Police v. District of Columbia*, 113 A.3d 195 (D.C. 2015). ........................... 13

*Gates v. Syrian Arab Republic*, 646 F.Supp. 2d 79 (D.D.C. 2009) ................................. 8

*Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. 2011) ............................................... 13, 14

*Jordan v. District of Columbia*, 161 F. Supp. 3d 45 (D.D.C. 2016). ............................. 28

*Mann v. Bahi*, 251 F. Supp. 3d 112 (D.D.C. 2017) ...................................... 16

*National Mut. Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582 (1949). ............................. 16, 17

*Organic Consumers Ass'n v. Hain Celestial Grp.*, Inc., 285 F. Supp. 3d 100 (D.D.C. 2018) ...... 15

*Organic Consumers Ass'n v. Smithfield Foods, Inc.,* 2020 D.C. Super. LEXIS 28 (D.C. Super.

   Ct. Dec. 14, 2020) ......................................................................... 23

*Pearson v. Sao Chung*, 961 A.2d 1067 (D.C. 2008) ..................................... 24

*Randolph v. Ing Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1 (D.D.C. 2007) ........................ 27, 28

*Re Banks*, 805 A.2d 990 (D.C. 2002) ............................................ 23

*Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192 (D.C. Cir. 2002) ............................ 27

*Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980 (D.C. 2015) ........................................ 13

*Shaw v. Marriott Int 'l, Inc.*, 605 F.3d 1039 (D.D.C. 2010) ........................................ 27

*Sierra Club v. Morton*, 405 U.S. 727 (1972) .............................................. 14

*Spokeo, Inc. v. Robbins, 136* S. Ct. 1540 (2016) ....................................... 26, 27

*Whiting v. AARP*, 637 F.3d 355 (D.C. Cir. 2011) ...................................... 24

## STATUTES

28 U.S. Code § 1332(a) ........................................................... 10

28 U.S. Code § 1447(c) ....................................................... 10, 27

D.C. Code § 28-3901 *et seq* ........................................................ 5, 7

D.C. Code § 28-3905(k) ........................................................ passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1) ................................................................. 21

Federal Rule of Civil Procedure 59(e) ....................................................................... 7

Federal Rule of Civil Procedure 60(a) ....................................................................... 7

U.S. CONST. art. III §2(1) ......................................................................................... 11

## INTRODUCTION

COMES NOW the Plaintiff Clean Label Project Foundation, by and through counsel, and moves this Court to reconsider its September 23, 2021 Order [ECF 14] granting Defendant's Motion to Dismiss, or in the alternative, remand to D.C. Superior Court pursuant to Fed. R. Civ. P. 59(e), 60 & 28 U.S. Code § 1447(c) (lack of subject matter jurisdiction).  On September 2, 2021, the District of Columbia Court of Appeals decided the case *Animal Legal Def. Fund. v. Hormel Foods Corp*., No. 19-CV-0397, 2021 D.C. App. LEXIS 254 (D.C. Sept. 2, 2021) which constituted intervening change in controlling law concerning the District of Columbia Consumer Protection Procedures Act ("D.C. CPPA"), warranting this Court's reconsideration. *See Animal Legal Def. Fund.* at *2-17; D.C. Code § 28-3901 *et seq.*  Further, Defendant's Motion to Dismiss [ECF 7] and Reply [ECF 11] misstated the facts of Plaintiff's claim and misapplied legal standards concerning the proper standing for both a nonprofit testing organization and a public interest organization to sue under the D.C. CPPA that led to errors of law and facts in the September 23, 2021 Order.

Plaintiff respectfully requests the Court to reconsider its Order of Dismissal and either deny the Defendant's Motion to Dismiss, or grant the Plaintiff a remand to D.C. Superior Court, and as grounds therefore state:

## BACKGROUND

On August 25, 2020, Clean Label Project Foundation ("Plaintiff") filed a complaint against Garden of Life, LLC ("Defendant"). Plaintiff's complaint against Garden of Life alleged that Garden of Life had deceived D.C. consumers with their advertising practices by adulterating their prenatal vitamins to include heavy metals, pesticides, and BPA, with some contaminants ranking as one of highest in concentration per serving when compared to competitors in the same

category.[1] Plaintiff engaged an independent, ISO 17025 accredited analytical chemistry laboratory to test the Defendant's prenatal vitamin products targeting pregnant women and unborn babies and found that seven (7) of the Defendant's Products[2] contained toxic heavy metals, BPA, and pesticides, contrary to their marketing claims that constituted a misleading advertising campaign of clean, healthy, non-artificial, nourishing nutrition in its Products that support the pregnant mother, the fetal brain, and other fetal developments superior to other competing brands.  Some of the explicit advertising touted:  "Nutritional Support for Mom & Baby", "Prenatal- Clean Nourishment for You & Your Baby Before, During & After Pregnancy", "Energy & Nutrition Healthy Fetal Development", "Clean is Healthy", "Say YES to Clean Vitamins", "You care about what you put into your body when it comes to choosing food-shouldn't that apply to your supplements, too?  All Garden of Life vitamins are made from real, whole foods with nutrients that your body is able to easily recognize",  "What to Look for: You definitely want to know 'where' your vitamins are coming from - look for whole food ingredients that are clean and Non-GMO verified.  You definitely don't want synthetic ingredients, binders, fillers, or artificial anything", "Helps Support Brain, Eyes and Nervous System in Developing Babies . . . Enhances the Quality of Breast Milk", "nutrition support for Moms & babies", and "Well, while the other guys spend their time preoccupied with their efficiency, we're uncompromising about your health.  Slow it down, make it by hand, grow it in

---

[1] *See* Exhibit 1, Compl. ¶¶ 100-111 (showing test results of lead, cadmium, and mercury in two of Defendant's test products to be 88.1% to 96% higher per serving than two hundred other prenatal vitamin products tested by CLP). The copy of the Complaint included in the Notice of Removal before this Court contains illegible pictures of the products and advertising materials from the Defendant's website.  Plaintiff herewith provide a copy of the original Complaint that includes legible pictures of the Defendant's false advertising claims at issue as Exhibit 1.
[2] Defendant's Products in question are: (1) Garden of Life Vitamin Code Raw Prenatal (180 ct); (2) Garden of Life MyKind Organics Prenatal Multi - Certified Organic Whole Food (90 ct); (3) Garden of Life Dr. Formulated Probiotics - Once Daily Prenatal (30 ct); (4) Garden of Life Oceans Mom Prenatal DHA (30 ct); (5) Garden of Life MyKind Organics Prenatal Once Daily (30 ct); (6) Garden of Life MyKind Organics - Prenatal Once Daily (90 ct); (7) Garden of Life MyKind Organics Prenatal (30 ct).

rich organic non-GMO soil with enough sun, air, water and time for it to be its best.", "Garden of life offers clean, whole food, prenatal multivitamins with the proper amounts of nutrients for moms and their babies.  Our Dr. Formulated Prenatal Probiotics are specifically formulated with clinically studied probiotic strains shown to support the immune systems of mom, her developing baby and her infant." *See* Exhibit 1, Compl. ¶¶8, 21, 88-90, 92-94 (including specific marketing claims made on the product packaging, on the Garden of Life website, and on retailers' websites in promotion of Garden of Life's vitamin products).  Defendant's false and misleading representations and omissions violated the District of Columbia Consumer Protection Procedures Act ("D.C. CPPA"), D.C. Code § 28-3901 *et seq.*, Plaintiff alleged Defendant's labelling and advertising tended to mislead and be materially deceptive about the true nature, quality, and ingredients of the Products.  Defendant's violations induce pregnant women to purchase the Products and unknowingly ingest lead, cadmium, mercury, BPA, and pesticides. Plaintiff brought this deceptive advertising cause on behalf of itself and the general public as both a non-profit testing organization and a public interest organization. *See* D.C. Code § 28-3905(k)(1)(C), (k)(1)(D) and (k)(2).

## LEGAL STANDARD

Plaintiff respectfully requests the Court to reconsider its Order granting Defendant's Motion to Dismiss.  Fed. R. Civ. P. 59(e) permits a party to seek reconsideration of a final judgment within 28 days once that judgment has been made by the Court.  Fed. R. Civ. P. 59(e). The four basic grounds for Rule 59(e) motion are manifest errors of law or fact, newly discovered or previously unavailable evidence, prevention of manifest injustice, and intervening change in controlling law. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Fed. R. Civ. P. 60 permits a party to seek reconsideration of a final judgment either (a) to correct a

mistake arising from an oversight or omission or (b) to seek relief from a judgment or order due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct; (4) void judgment; (5) satisfied, released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(a), (b); *see also Gates v. Syrian Arab Republic*, 646 F.Supp. 2d 79, 83 (D.D.C. 2009).

On September 2, 2021, the District of Columbia Court of Appeals decided the case *Animal Legal Def. Fund. v. Hormel Foods Corp*., No. 19-CV-0397, 2021 D.C. App. LEXIS 254 (D.C. Sept. 2, 2021), which specifically addressed the standing requirement under the D.C. CPPA.  *See Animal Legal Def. Fund.* at *2-17.[3]  As this decision preceded this Court's September 23, 2021 Order by three (3) weeks, and issued nine (9) months after the Plaintiff had filed its Opposition to the Defendant's Motion to Dismiss on December 14, 2020 and after the surreply period had long passed, neither the parties nor this Court addressed this crucial, controlling intervening law prior to this Court's grant of motion to dismiss in this matter. Plaintiff did not become aware of *Animal Legal Def. Fund.* until after the Court's September 23, 2021 Order and requests this Court to reconsider its order of dismissal under new controlling intervening law and manifest injustice and error of law and facts. *See* Fed. R. Civ. P. 59(e) & 60; *see also*, *Animal Legal Def. Fund.* at *2-17.

## ANALYSIS

Plaintiff respectfully requests the Court to reconsider its Order regarding Defendant's Motion to Dismiss, as Plaintiff's standing is protected by the D.C. CPPA, specifically D.C. Code

---

[3] *See* Exhibit 2, Complaint, *Animal Legal Def. Fund. v. Hormel Corp.*, (D.C. Super. Ct. filed Aug. 2, 2016) (No. 19-CV-0397).

§ 28-3905(k)(1)(D) in light of the recent *Animal Legal Def. Fund.* decision in the D.C. Court of

Appeals. *See Animal Legal Def. Fund.* at *2-17. If this Court decides to not exercise subject

matter jurisdiction over this matter, Plaintiff requests that this matter be remanded so as not to

deprive the Plaintiff of its statutory remedy under the D.C. CPPA.[4]

As there is no federal question alleged nor is there diversity in this case as the amount in

controversy is insufficient, Plaintiff requests that if this Court decides not to exercise subject

matter jurisdiction over this case even in light of the *Animal Legal Def. Fund.* decision that

supports CLP's constitutional standing, that this case be remanded to D.C. Superior Court, where

the precedents demonstrate that the Plaintiff CLP has standing as both a non-profit testing

organization and as a public interest organization, and is entitled to statutory redress within the

D.C. Superior Court, as it has found previously in other, similar D.C. CPPA cases. *See Animal*

*Legal Def. Fund.* at *2-17; *see also*, *Clean Label Project Found. v. Nutraceutical Corp.*, No.

2020 CA 003754 B, Op. at 4-5 (D.C. Super. Ct. Jan. 25, 2021) (holding that Clean Label Project

Foundation has standing under D.C. Code § 28-3905(k)(1)(D)); *see also*, *Clean Label Project*

*Found. v. Panera, LLC*, No. 2019 CA 001898 B, 2019 D.C. Super. LEXIS 14, at *6-8 (D.C.

Super. Ct. Oct. 11, 2019) (holding that Clean Label Project Foundation has standing, under D.C.

Code § 28-3905(k)(1)(D)(i) & (ii) as an adequate private attorney general representative with

"sufficient nexus to the interest involved of the consumer or class" to bring a deceptive

---

[4] As Judge Hiram E. Puig-Lugo of the D.C. Superior Court has also recently stated in a decision issued on January 25, 2021, also issued after the Plaintiff's surreply period had passed in the present matter, involving Plaintiff CLP against another prenatal vitamin maker, Nutraceutical Corporation, that a long, robust line of decisions from "the D.C. Superior Court has found that non-profit groups that test the quality of products have constitutional standing, at least at the pleading stage, to bring claims on behalf of consumers and the general public," and conferring standing to CLP. *See* Exhibit 3, *Clean Label Project Found. v. Nutraceutical Corp.*, No. 2020 CA 003754 B, Op. at 4-5 (D.C. Super. Ct. Jan. 25, 2021) (finding that CLP has constitutional standing under D.C. Code § 28-3905(k)(1)(C) as a testing organization, that the D.C. Counsel established that a "testing organization" is injured when a merchant violates the organization's "right to truthful information about the goods or services it tests.", and citing to *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016) and a host of other Superior Court cases as support in denying the defendant prenatal vitamin maker's motion to dismiss.) [hereinafter *CLP v. Nutraceutical*].

advertising lawsuit under the D.C. CPPA against Panera, explaining that CLP is a public interest organization with the "mission goal, and work of protecting consumers through various efforts including promoting accurate labeling of consumer goods [and] shows a sufficient nexus" to the interest of the consumer or class); *see also*, Exhibit 4, Affidavit of Jaclyn Bowen, MPH, MS, Executive Director of CLP ¶¶ 12-18 (attesting that "CLP's lawsuit against Garden of Life was not filed as a class action, nor is it intended to be one", that CLP spent no more than $251.93 for purchasing Defendant's products for testing as a consumer, which amounts to seven (7) potential violations under D.C. Code § 28-3905(k)(2), making CLP eligible for at most $10,500 in potential statutory damages for the Products that CLP purchased individually, which is far short of the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S. Code § 1332(a), and attesting that CLP is not seeking statutory damages on behalf of the general public); *and see*, 28 U.S. Code § 1447(c).

Defendant vehemently argued that CLP could never meet the constitutional standing requisite under the D.C. CPPA even if this case is remanded.  *See* Def. Mem. at 11 n.4.  This is patently false as D.C. Superior Court has previously found that CLP has proper standing under the D.C. CPPA in near-identically alleged complaints against other violators.  *See* Ex. 3, *Clean Label Project Found. v. Nutraceutical Corp.*, No. 2020 CA 003754 B, Op. at 4-5 (D.C. Super. Ct. Jan. 25, 2021); *see also*, *Clean Label Project Found. v. Panera, LLC*, No. 2019 CA 001898 B, 2019 D.C. Super. LEXIS 14, at *6-8 (D.C. Super. Ct. Oct. 11, 2019).

**I.**   **The *Animal Legal Def. Fund. Decision* Explained that the D.C. CPPA's Standing Requirement Does Not Require a Showing of Injury-In-Fact and Modifies the Article III Standing Requirement, which Entitles CLP to Representational Standing Under D.C. Code § 28-3905(k)(1)(D)**

Defendant argued that Plaintiff's Complaint does not sufficiently plead an "injury-in-fact" to establish standing under Article III standing requirements, therefore the Court believed it

lacked subject matter jurisdiction and Plaintiff's Complaint was dismissed.  *See CLP v. Garden of Life*, No. 20-3229 (RC), 2021 U.S. Dist. LEXIS 181649, at *10-16 (D.D.C. Sept. 23, 2021).  As there is no federal question, nor is there minimal diversity alleged in the complaint, this case should be remanded as a matter of law back to D.C. Superior Court.  *See* ¶¶ Compl. 36 n.9, 46, 135-141 (where no class action claim was alleged with a single plaintiff, the CLP, acting as private attorney general and stating clearly that there is no diversity jurisdiction as the amount in controversy does not exceed the federal standard); *see also*, Exhibit 4, Affidavit of Jaclyn Bowen, MPH, MS, Executive Director of CLP ¶¶ 12-18 (attesting that CLP's lawsuit against Garden of Life was not filed as a class action, that it is not seeking damages on behalf of the general public, and that CLP is eligible for at most $10,500 in potential statutory damages for the Garden of Life Products that CLP purchased individually, which is far short of the $75,000 amount in controversy requirement for diversity jurisdiction).  However, as the Defendant disputes both in its Notice of Removal [ECF 1], alleging that the Plaintiff should be in federal court under the Class Action Fairness Act and diversity jurisdiction, and this Court granted the Defendant's Motion to Dismiss based on standing under the D.C. CPPA, a statute of the District of Columbia, we will hypothetically assume for the sake of discussing *Animal Legal Def. Fund.*, the new controlling law, that this Court sits in diversity of this matter, and shall more thoroughly discuss remand in Section IV, *infra*.  *See Animal Legal Def. Fund.* at *2-17.

Under Article III, federal courts have the power to hear:  "Controversies . . . between Citizens of different States." U.S. CONST. art. III §2(1).  This diversity provision enables federal courts to hear lawsuits that present no federal questions but depends solely on state law.  Under the *Erie* doctrine, the federal courts, when confronted with the issue of whether to apply federal or state law in a diversity lawsuit, must apply state law on issues of substantive law.  "Except in

matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in

any case is the law of the State. And whether the law of the State shall be declared by its

Legislature in a statute or by its highest court in a decision is not a matter of federal concern."

*See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  The court in *Erie* also found it is an

"unconstitutional assumption of power" by the federal court to invade state autonomy and

prevented "uniformity in the administration of the law of the State". *See id*, 75 & 79. Therefore,

importantly, federal court cannot create a federal body of decisions interpreting state law that

diverges from the state law.  *See* F. Andrew Hessick, *Standing in Diversity*, 65 Ala. L. Rev. 417,

423 (2013); *see also, Erie* at 72-73 ("in all matters except those in which some federal law is

controlling, the federal courts exercising jurisdiction in diversity of citizenship cases would

apply as their rules of decision the law of the state, unwritten as well as written").  If federal

standing involves an assessment of the merits of the plaintiff's claim, the standing of the plaintiff

who invokes state law must depend on state law.  *See id*.

In light of the differences between federal and state standing doctrines, following federal

standing requirements in a diversity case may prevent a federal court from hearing a suit that the

state courts would allow.  The Order Granting Defendant's Motion to Dismiss erroneously

decided that Plaintiff lacks Article III standing under the D.C. CPPA without the benefit of the

recent decision of D.C.'s highest court in *Animal Legal Def. Fund. v. Hormel Corp.*, where the

2012 amendment to D.C. CPPA revealed "the District of Columbia Council's intent to modify

traditional U.S. Const. art. III standing requirements" under D.C. Code § 28-3905(k)(1)(D), and

that unlike other state law, this 2012 D.C. amendment bears Article I constitutional force.  *See*

*Animal Legal Def. Fund. v. Hormel Foods Corp.*, No. 19-CV-0397, 2021 D.C. App. LEXIS 254,

at *12 (D.C. Sept. 2, 2021) ("The District of Columbia's local courts, 'established by Congress

pursuant to Article I, are not [constitutionally] bound by the requirements of Article III.' *District of Columbia v. Walters*, 319 A.2d 332, 338 n.13 (D.C. 1974); *see also Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 987 (D.C. 2015); *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 12 (D.C. 1993). Our courts nonetheless generally follow Article III's guidance to adjudicate only 'cases' or 'controversies'—as implemented via standing doctrine—albeit 'for prudential reasons.' *Fraternal Order of Police v. District of Columbia*, 113 A.3d 195, 199 (D.C. 2015). We do so in recognition of the sound judicial policy 'that an adversary system can best adjudicate real, not abstract, conflicts.' *Grayson*, 15 A.3d at 233 (citation omitted). But that prudential judgment is subject to legislative override, and nobody 'questions the [D.C.] Council's authority to remove prudential limits on standing.' *Id*. at 259 (Ruiz, J., concurring in part and dissenting in part).").  As discussed in *Animal Legal Def. Fund,* the limitations to bringing suit under D.C. Code § 28-3905(k)(1)(D) "reveal the Council's intent to modify traditional Article III standing requirements with the [] statutory test."  *See id.*  The D.C. Court of Appeals found the 2012 amendment to D.C CPPA "evinces a plain legislative intent to account for core standing concerns—i.e., '[w]hether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution,' -- while modifying Article III's doctrinal requirements with a more expansive statutory test." *See id*, *12-13 (citing *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972) (citation omitted).  The Court of Appeals further states:

> Two additional points make that intent particularly clear. First, (k)(1)(D) would be pointless if it incorporated Article III's restrictions. Recall that (k)(1)(C) already expressly empowers a nonprofit organization to bring suit on behalf of itself or its members, so that if (k)(1)(D) were likewise interpreted as incorporating that requirement, it would serve no independent function. . . Second, the legislative history—far from being silent as it was with the 2000 amendments . . . makes the Council's intent to modify Article III requirements clear.

*See id*, *13-14.

Moreover, *Animal Legal Defense Fund.* abrogates *Grayson v. AT&T Corp*., 15 A.3d 219, 232 (D.C. 2011) (en banc), also heavily relied upon by the Defendant in its Motion to Dismiss, as only interpreting the older 2000 Amendments to the D.C. CPPA, and not the 2012 Amendments that expanded the standing requirement, explicitly modifying the Article III standing requirements with regard to lawsuits brought under (k)(1)(D) with a statutory test. *See Animal Legal Defense Fund* at *9-15 ("That Committee Report explains that subsection (k)(1)(D) 'responds most directly to *Grayson* and the Committee's desire' to confer 'maximum standing' to public interest organizations:  Subparagraph (D) is intended to reach, for [public service organizations], the full extent of standing as may be recognized by the District of Columbia courts. This may include bases for standing that . . . the D.C. courts have not yet had occasion to recognize . . . . Subparagraph (D) is intended to explicitly and unequivocally authorize the court to find that a public interest organization has standing beyond what would be afforded under sub-paragraphs (A)-(C), beyond what would be afforded under a narrow reading of prior D.C. court decisions, and beyond what would be afforded in a federal case under a narrow reading of prior federal court decisions on federal standing.") (*quoting* Consumer Protection Act of 2012, Report on Bill 19-0581, at 6 (Nov. 28, 2012)) [brackets and omissions in original].

> *Animal Legal Def. Fund.* also found that the Consumer Protection Act of 2012, Report on Bill 19-058 demonstrates that

> the Council intended public interest organizations bringing suit under (k)(1)(D) to be free from any requirement to demonstrate their own Article III standing. Any contrary conclusion would defeat the Council's "explicit[]" and "unequivocal[]" intent for (k)(1)(D) to confer standing "beyond" what is afforded under (k)(1)(C). It would likewise fall short of the Council's stated intention that (k)(1)(D) reach "the full extent of standing as may be recognized by the District of Columbia

courts," where we have made clear that extent exceeds Article III's bounds where the Council so provides, as we conclude it did here.

*See id, *15 (citing Consumer Protection Act of 2012, Report on Bill 19-0581, at 6 (Nov. 28, 2012) (citation omitted).

Within the September 23, 2021 Order, this Court cited to federal cases that do not pertain to the D.C. CPPA in supporting its ruling to deny CLP's standing under (k)(1)(D), and two D.C. CPPA Section (k)(1)(D) cases that were decided prior to *Animal Legal Defense Fund*., one of which actually found standing upon facts similar to this case under Section (k)(1)(D).  *See CLP v. Garden of Life*, No. 20-3229 (RC), 2021 U.S. Dist. LEXIS 181649, at *10-16 (D.D.C. Sept. 23, 2021) (*citing* to *Organic Consumers Ass'n v. Hain Celestial Grp*., Inc., 285 F. Supp. 3d 100, 102-03 (D.D.C. 2018), finding injury in fact where plaintiff had to expend more resources on programmatic efforts to counteract defendant's misinformation regarding synthetic ingredients in food products, and *compare with* CLP, which similarly alleged that it not only ordered the purchase and testing of the Defendant's Products with an independent laboratory, advocated for and educating consumer, but has retained the undersigned counsel to pursue this action, none of which should be assumed, contrary to plain reading and common sense, were free of charge and should qualify for standing under Section (k)(1)(D).  *See* Compl. ¶¶ 135, 138.); *Beyond Pesticides v. Dr Pepper Snapple Grp., Inc*., No. 17-cv-1431, 2019 U.S. Dist. LEXIS 109812, at *1 (D.D.C. July 1, 2019) (*predating Animal Legal Def. Fund*. that was decided in September of 2021); *and see, Mann v. Bahi*, 251 F. Supp. 3d 112, 119 (D.D.C. 2017) (predating *Animal Legal Def. Fund.*, does not address (k)(1)(D) standing, and now incorrect that CPPA can go no further than Article III requirements under D.C. law).   Therefore, as the D.C. Council intends for D.C. CPPA to broadly regulate unfair or deceptive trade practices in the District of Columbia and is so

authorized under Article I, the Article III standing requirement ought not to be applied in a way

that disables the D.C. CPPA.  *See Animal Legal Def. Fund* at *7-24.

Additionally, while D.C. courts generally follow Article III standing requirements, they

are not compelled to follow Article III as they were a unique congressional judicial creation

under Article I, and this entitles this Court to Article I powers, even if it is a federal district court

created under Article III when considering standing requirements under D.C. statutes.  *See*

*National Mut. Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 591-92 (1949).

> It is too late to hold that judicial functions incidental to Art. I powers of Congress cannot
> be conferred on courts existing under Art. III, for it has been done with this Court's
> approval. O'Donoghue v. United States, 289 U.S. 516.  In that case it was held that,
> although District of Columbia courts are Art. III courts, they can also exercise judicial
> power conferred by Congress pursuant to Art. I. The fact that District of Columbia courts,
> as local courts, can also be given administrative or legislative functions which other Art.
> III courts cannot exercise, does but emphasize the fact that, although the latter are limited
> to the exercise of judicial power, it may constitutionally be received from either Art. III
> or Art. I, and that congressional power over the District, flowing from Art. I, is plenary in
> every respect.

*See id.* In *Tidewater*, the Supreme Court explained that federal district courts only have

jurisdiction to adjudicate cases over suits involving debts to which the United States is a party in

limited amounts due to congressional authority under Article I, not Article III.  *See id.* at 591-

594.  Also, the federal district courts' jurisdiction over bankruptcy cases, also created by the

plenary power of Congress under Article I with the same authority as that which created the D.C.

local courts, would otherwise be "beyond their jurisdiction because of lack of diversity required

under Art. III".  *See id*. at 591-594 ("Thus, the Court held that Congress had power to authorize

an Art. III court to entertain a non-Art. III suit because such judicial power was conferred under

Art. I. Indeed, the present Court has assumed, without even discussion, that Congress has such

power.").  Further, "[the] fact that District of Columbia courts, as local courts, can also be given

administrative or legislative functions which other Art. III courts cannot exercise, does but

emphasize the fact that, although the latter are limited to the exercise of judicial power, it may constitutionally be received from either Art. III or Art. I, and that congressional power over the District, flowing from Art. I, is plenary in every respect." *See id*. at 592.

In light of *Animal Legal Defense Fund*., where the D.C. Court of Appeals has unequivocally articulated the representative standing criteria under Section (k)(1)(D) "to be free from any requirement to demonstrate their own Article III standing", this Court, under the *Erie* Doctrine and *Tidewater*, is now empowered like the D.C. Court of Appeals to "exceed Article III bounds where the Council so provides" conferred through Article I. *See Animal Legal Def. Fund* at *15-16 ("That drafting history conforms to our view that the Council ultimately retained Article III restrictions in (k)(1)(C) suits, *supra* note 5, but carved out the subset of nonprofits that are public interest organizations as to whom those restrictions do not apply in (k)(1)(D)."); *see also*, *Erie*, 304 U.S. at 78; *and see Tidewater* at 590-594 ("It long has been held that Congress may clothe District of Columbia courts not only with the jurisdiction and powers of federal courts in the several states but with such authority as a state may confer on her courts . . . . However, it is contended that Congress may not combine this function, under Art. I, with those under Art. III, in district courts of the United States . . . .   It is too late to hold that judicial functions incidental to Art. I powers of Congress cannot be conferred on courts existing under Art. III, for it has been done with this Court's approval.").   This Court has the discretion to expand beyond Article III requirements in considering D.C. CPPA cases seeking standing under Section (k)(1)(D), and should do so in order to afford comity to D.C. local courts and under Erie. *See id*.; *Erie*, 304 U.S. at 78.[5]

---

[5] *See also*, *Younger v. Harris*, 401 U.S. 37, 44 (1971) ("that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by

## II.     **CLP Meets the Section (k)(1)(D) Statutory Test Under *Animal Legal Defense Fund*.**

The next question is whether Clean Label Project Foundation (CLP) meets the statutory test

under D.C. Code § 28-3905(k)(1)(D).  It does.  CLP should meet three elements in order to have

standing under D.C. Code § 28-3905(k)(1)(D): (1) it must be a public interest organization; (2) it

must identify "a consumer or a class of consumers" that could bring suit in their own right; and

(3) it must have a "sufficient nexus" to those consumers' interests "to adequately" represent them.

*See Animal Legal Defense Fund.* at *17-18; D.C. Code § 28-3905(k)(1)(D)(i)&(ii).

In *Animal Legal Defense Fund.*, plaintiff ALDF neither purchased and tested any products,

nor did it allege that it suffered any "concrete harm", was "perceptibly impaired in its ability to

carry out its activities or provide services in some manner" (as this Court's Order required), and

only alleged generalized grievance against Hormel's inhumane treatment and slaughter of its

meat animals contrary to its "100% natural" marketing campaign to D.C. consumers.  *See*

*Animal Legal Def. Fund.* at *17-21, 25-26 (finding that the public interest organization met

standing requirements when the "complaint's allegations in this case substantiated each of the

three critical components of (k)(1)(D) standing: (1) that it is a public interest organization

organized and operating, in part, to advance consumer interests; (2) that it has a sufficient nexus

to those consumers' interests to adequately represent them; and (3) that there is a class of D.C.

---

many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."). The D.C. government has an important and legitimate interest that it has sought to preserve for more than twenty (20) years, protecting its consumers' interests that deserves this Court's comity, specifically in this case to protect vulnerable pregnant women and fetuses from unknowingly purchasing and exposure to Defendant's prenatal vitamin products containing toxins that are marketed as healthy, clean, and nourishing.

consumers who eat meat and were targeted by Hormel's Natural Choice ads (and further substantiating its view that they were likely to be misled by claims like '100% natural'"); *contrast with*, *CLP v. Garden of Life*, 2021 U.S. Dist. LEXIS 181649, at *10-16.

Similar to the Animal Legal Defense Foundation, CLP is a well-known national non-profit 501(c)(3), public interest organization whose mission is to educate the public and enable consumers to make informed shopping choices in food and other consumer products. *See* Compl. ¶¶ 37-41. As well-pleaded in the complaint, "CLP was formed in 2016 with the goal of reducing contamination across all consumer-packaged goods products . . ., [and] uses state-of-the-art laboratory testing to identify the best and worst labeled Products and publishes top and bottom performers on its website free of charge. CLP has an interest in food label truth, transparency, and consumers' right to know what is in the products they purchase. To that end, CLP educates consumers by presenting unbiased science in a straight-forward and useful medium to the public, allowing consumers to make data-based decisions." *See* Compl. ¶¶ 39-41; *compare with*, *Animal Legal Def. Fund.* at *17-21, 25-26 (qualifying for the first statutory requirement under (k)(1)(D), where "ALDF is a public interest organization, i.e., a nonprofit 'organized and operating,' at least in part, 'for the purpose of promoting interests or rights of consumers,' § 28-3901(a)(15). While ALDF's primary mission is to 'protect the lives and advance the interest of animals,' providing consumers with accurate information about how their meat is sourced is one of its subsidiary purposes.").

For the second statutory requirement, of identifying "a consumer or a class of consumers" that could bring suit in their own right, CLP identified the class of consumers it seeks to represent as D.C. consumers who are targeted and have been or will be misled, by Garden of Life's ads, or simply, pregnant women who are induced to purchase the Products due to the

Defendant's ads, and unknowingly ingest lead, cadmium, mercury, BPA, and pesticides. *See* Compl. ¶¶ 21, 25-33, 89-100, 112-41 (stating that CLP tested the Defendant's Products, which contained heavy metals, pesticides, and BPA, and that D.C. consumers, primarily an at-risk population of pregnant women with developing fetuses, are enticed to purchase these Products over the Defendant's competitors on the basis of its false marketing claims that its vitamins are clean, healthy, better than others, and nourishing, and do no expect the Defendant's Products to contain heavy metals and other toxins, and that CLP brings this deceptive advertising cause on behalf of itself and the general public of D.C. consumers at risk of Defendant's misleading marketing practices, seeking injunctive relief on behalf such D.C. consumers); *see also*, *Animal Legal Def. Fund.* at *19-20 (finding that "ALDF adequately identifies the class of consumers it seeks to represent as D.C. consumers who are targeted, and have been or will be misled, by Hormel's Natural Choice ads").

Third, CLP has a sufficient nexus to the group of consumers it identified and has a sufficient stake in the action to "pursue it with requisite zeal and concreteness." *See*, *Animal Legal Def. Fund.* at *21 (finding that ALDF had met this third statutory requirement as it "has long sought to ensure that meat-eating consumers have 'accurate information about factory farming conditions and practices' so they can make more informed decisions about meat consumption, . . . designed to promote consumers' interest in 'truth in meat and poultry advertising.'"). Neither the Court nor the Defendant questioned CLP's "aptitude or zeal" in prosecuting this suit, or denied that CLP's mission is food label truth and transparency so that consumers can make informed shopping choices and does substantial work in the field of consumer protection. *See Animal Legal Def. Fund.* at *21; *see also*, *CLP v. Garden of Life*, 2021 U.S. Dist. LEXIS 181649, at *10-16; *and see Compl.* ¶¶ 37-41. CLP pleaded in the complaint

that it conducted extensive testing of the Defendant's products, that it was "founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel, to pursue this action, and Plaintiffs have previously represented District consumers in similar actions under the CPPA."  *See* Compl. ¶¶ 25, 37-47, 100-111, 138-39; *see also*, Exhibit. 4, Affidavit of Jaclyn Bowen ¶¶ 3-15.  There is a direct nexus between CLP's work in food label truth, transparency, clean and healthy food, educating the public to enable consumers to make informed shipping choices through scientific data, and ensuring that Garden of Life does not mislead pregnant consumers with its false "clean" and "healthy" marketing campaign, and induce them to purchase prenatal vitamins containing various toxins.  *See Animal Legal Def. Fund.* at *21.

If this Court denies the defendant's motion to dismiss and grants the Plaintiff representative standing to sue under D.C. Code § 28-3905(k)(1)(D), pursuant to *Animal Legal Def. Fund.*, then the Plaintiff shall next briefly address defendant's First Amendment and primary jurisdiction arguments. *See Animal Legal Def. Fund.* at *7-21.

## III.    First Amendment Arguments Are Premature on a 12(b)(6) Motion

While the Court did not reach the Defendant's arguments outside of standing and subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), if this Court decides to grant CLP standing in this case on reconsideration, it is important to note that on a 12(b)(6) motion to dismiss, the pleading standard articulated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) should control.  A motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a

complain to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Though a mere "formulaic recitation of the elements of a cause of action will not do," "plausibility" is far from "probability." *Id*. Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly, 550 U.S. at 566* (internal quotation marks omitted).

CLP's allegations that the Defendant's marketing of the Products is false and misleading, with specific identification in the complaint of those very advertising touting "clean", "healthy", and "nourishing", etc. on the Products' packaging, on the Defendant's website marketing those Products, and on retailers' websites promoting the sale of the Products provided by the Defendants, contrasted against the scientific tests performed that showed the various levels of heavy metals, pesticides and BPA found by an independent certified analytical laboratory, is sufficient, at this stage to support false advertising and state a valid claim under the D.C. CPPA. *See* Exhibit 1, Compl. ¶¶8, 21, 88-90, 92-94, 100-120. The Defendant can certainly make a First Amendment free speech argument at the summary judgment stage, but it is for now premature, as Plaintiff's allegations of the Defendant's false advertising and misleading marketing campaign, sufficiently pleaded, is taken as true at this juncture. *See Iqbal*, 556 U.S. at 678.

Similar to the Defendant in *Organic Consumers Ass'n v. Smithfield Foods, Inc.*, Defendant Garden of Life argues that applying the D.C. CPPA would violate the First Amendment because the commercial speech that Plaintiff challenges is grounded in legitimate scientific evidence and facts. *See* Def. Mot. at 12-13; *See also Organic Consumers Ass'n v.*

*Smithfield Foods, Inc.,* 2020 D.C. Super. LEXIS 28 (D.C. Super. Ct. Dec. 14, 2020). But commercial speech is only protected if it is not misleading. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980); *see also in Re Banks*, 805 A.2d 990, 1001 (D.C. 2002) (finding that appellant "had no First Amendment right to engage in commercial speech calculated to deceive or mislead prospective clients by misrepresenting his qualifications"). "[F]alse statements, erroneous statements, or statements that have the likelihood or tendency to deceive . . . are not entitled to protection in the first place." *See Ass'n of Private Sector Colleges & Univs. v. Duncan*, 681 F.3d 427, 457 (D.C. Cir. 2012). Even commercial speech that "is only potentially misleading" may be regulated without violating the First Amendment, if "the asserted governmental interest in regulating the speech is substantial." *See Alliance for Natural Health U.S. v. Sebelius*, 786 F. Supp. 2d 1, 13 (D.D.C. 2011). Here, Plaintiff's allegations that Defendant's misleading statements and advertising practices regarding their Products violate the CPPA do not raise any First Amendment concern. The First Amendment affords no protection for statements that are misleading and deceptive, as alleged in the complaint. *See Organic Consumers Ass'n v. Smithfield Foods, Inc.*, 2020 D.C. Super. LEXIS 28, at 13-14.  *See Iqbal*, 556 U.S. at 678.

Under the D.C. CPPA, "a claim 'of an unfair trade practice is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer.'" *See Whiting v. AARP*, 637 F.3d 355, 363-64 (D.C. Cir. 2011) (quoting *Pearson v. Sao Chung*, 961 A.2d 1067, 1075 (D.C. 2008)). A court may "appropriately grant a motion to dismiss on a deceptive practice claim if no reasonable person would be ... deceived." *Whiting*, 637 F.3d at 364.

Defendant labels and advertises prenatal vitamin products as "clean" and "healthy" prenatal vitamin products derived from natural sources. Defendants also presents their products as healthy, beneficial and capable of supporting brain development in developing babies, as well as promoting the emotional well-being of mothers and enhancing the quality of their breast milk. *See* Compl. ¶93-94.  Defendant's labeling and advertising mislead reasonable consumers who may be induced to purchase Defendant's Products as they do not expect a product labeled as "clean" would contain toxins harmful to their developing babies that could impair their neurological development. *See id.* at 98 & 123.  Therefore, Defendant's arguments based on First Amendment must fail under Fed. R. C. P 12(b)(6).

**IV.**    <u>**Primary Jurisdiction Doctrine Does Not Apply and This Court Will Not Be Supplanting the FDA or EPA in Adjudicating the Plaintiff's Claims Under the D.C. CPPA**</u>

Defendant argues that CLP's deceptive marketing claims brought under the D.C. CPPA are preempted by FDA and EPA regulations. *See* Def. Mot. at 17. Contrary to the Defendant's assertions, no federal law or federal law element could be found in CLP's complaint. Defendant's argument involving the EPA's recommendation that the daily consumption of mercury should be limited to 1 part per billion per kilogram of body weight per day, and that seafood containing 15 parts per million of mercury as "Best Choice" suggested by EPA that can be consumed up to three times per week during pregnancy, is the perfect example to showcase why this case has nothing to do with federal regulations or primary jurisdiction and is actionable under the D.C. CPPA.  *See* Def. Mot. at 19-20.  Plaintiff CLP found the presence of mercury in the Defendant's touted "clean", "healthy" and beneficial prenatal vitamins to contain 23 parts per billion or lower of mercury per serving in its various Products targeting pregnant women.  *See* Compl. ¶¶ 8, 21, 88-90, 92-94, 100-120.  The Court is asked to decide whether a pregnant

mother, who may have already consumed the weekly recommended seafood containing mercury, or eats no seafood whatsoever so she and her fetus (weighing less than 1 kilogram for much of the pregnancy) can choose to avoid any harmful effects from the consumption of any mercury, might be deceived by the Defendant's advertising and unknowingly purchase and consume Defendant's purportedly "clean" prenatal vitamins that actually contain 23 ppb of mercury per serving, and whether such trade practices violate the D.C. CPPA.  This has nothing to do with either the EPA or the FDA's primary jurisdiction.

Recently, the D.C. Superior Court has held in the motion to dismiss context, in a lawsuit also brought by Plaintiff CLP against defendant Panera, LLC, with similar preemption arguments forwarded by the Defendant based on federal regulation institutions. Panera referred to the Food Drug and Cosmetic Act ("FDCA") and the Nutrition Labeling and Education Act ("NLEA"). However, references to any regulation are misplaced, even where regulatory guidelines allowed a tolerance level of the contaminant, glyphosate, to be higher than what was detected in Panera's tested product, and where the Plaintiff's claims were potentially inconsistent with federal laws. The Superior Court stated:

> Panera confuses the core issue of this case. Plaintiffs are not alleging that it is unacceptable to have any trace amount of glyphosate in the food products, but are rather contending that the presence of glyphosate, pesticides, or fungicides contradicts what a reasonable consumer would consider as "clean" or "100% clean" food. Compl. ¶ 61. An interpretation of "clean" in food labeling would not directly or indirectly contravene the FDCA and NLEA's regulations of safe levels of glyphosate. While Panera may use these regulations and standards as a basis for whether a certain level of glyphosate residue in foods is safe, this does not preempt the claim overall as Plaintiffs are challenging the use of the word "clean" in reference to food that contains the chemical substances. Accordingly, Panera's claim that Plaintiffs' allegations are precluded by federal law is without merit.

*See Clean Label Project Found. v. Panera, LLC*, No. 2019 CA 001898 B, 2019 D.C. Super. LEXIS 14, at *12-13 (D.C. Super. Ct. Oct. 11, 2019) (denying motion to dismiss).  Similarly, the

Plaintiff is challenging the Products under the D.C. CPPA to determine whether the presence of

toxins in the Products contradicts what a reasonable consumer would consider as "clean",

"healthy" and beneficial to pregnant moms and fetuses, and thus state a valid, actionable claim.

*See* Compl. ¶¶ 88-137; *see also Clean Label Project Found.*, 2019 D.C. Super. LEXIS 14, at

*12-13.

## V.     A Word On Spokeo, Inc. v. Robbins, 136 S. Ct. 1540 (2016) as an Error of Law in Light of Animal Legal Def. Fund.

Both the Defendant and this Court cites to *Spokeo, Inc. v. Robbins, 136* S. Ct. 1540

(2016) to support that "Article III standing requires a concrete injury even in the context of a

statutory violation." *See* Def. Mot. at 11; *see also*, *CLP v. Garden of Life*, 2021 U.S. Dist. LEXIS

181649, at *7-15.  Defendant also claims Plaintiff "must still show evidence of an injury that

"affect[ed] the plaintiff in a personal and individual way." *See id.*  As detailed above, Animal

*Legal Def. Fund*. has completely removed the traditional Article III, injury-in-fact requirement

from qualifying for standing under Section (k)(1)(D).  *See* Animal Legal Def. Fund. at *10-17.

Additionally, *Spokeo* stated that if a statute violation automatically implies a concrete harm or

material risk of concrete harm, even one that is "difficult to prove or measure", a plaintiff does

not need to identify "any additional harm" beyond the statutory violation. *See Spokeo,* 136 S. Ct.

at 1549-50. Plaintiff has alleged that Defendant's merchant violations induce pregnant women to

purchase the Products and unknowingly ingest toxins which are harmful to their unborn children.

Furthermore, Plaintiff has a statutory right to bring a D.C. CPPA action due to their status

as a public interest organization. *See Animal Legal Def. Fund.* at *10-17. The deprivation of that

right constitutes an injury-in-fact that is sufficient to establish standing, even though Plaintiffs

may not have suffered a judicially cognizable injury in the absence of the statute. *See Shaw v.*

*Marriott Int 'l, Inc*., 605 F.3d 1039, 1042 (D.D.C. 2010). "("[T]he deprivation of the CPPA

statutory right to be free from improper trade practices may constitute an injury-in-fact sufficient

to establish standing, even though the plaintiff would have suffered no judicially cognizable

injury in the absence of the statute." *See Toxin Free USA v. JM Smucker Co*., No. 2019 CA 3192

B, 2019 D.C. Super. LEXIS 15, at *6 (D.C. Super. Ct. Nov. 6, 2019).

**VI.     If this Court Declines to Exercise Jurisdiction Over this Matter, We Ask That
            This Case Be Remanded to D.C. Superior Court**

If this Court declines to exercise federal subject matter jurisdiction over this case, even in

light of *Animal Legal Def. Fund*.'s liberal standing requirement under Section (k)(1)(D), then

Plaintiff requests that this case be remand to the Superior Court of the District of Columbia.  *See*

*Republic of Venezuela v. Philip Morris Inc*., 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28

U.S.C. § 1447(c)); *see also Randolph v. Ing Life Ins. & Annuity Co*., 486 F. Supp. 2d 1, 10-11

(D.D.C. 2007) ("When it appears that a district court lacks subject matter jurisdiction over a case

that has been removed from a state court, the district court must remand the case."); *see also Blue*

*v. Fremont Inv. & Loan*, 584 F. Supp. 2d 10, 11-12 (D.D.C. 2008); 28 U.S. Code § 1447(c) (lack

of subject matter jurisdiction). Although Defendant may argue against a remand by claiming it

would be a "futile waste of judicial resources," the "futility exception" this argument has been

"rejected by the Third, Fourth, Seventh, and Tenth Circuits, nor have the First and Second

Circuits adopted a futility exception when given the opportunity to do so, and the Supreme

Court, in dicta, has expressed a reluctance to recognize a futility exception."  *See Randolph*, 486

F. Supp. 2d at 11.

Also, in terms of affording comity to the D.C. local courts, "a remand may best promote

the values of economy, convenience, fairness, and comity. Both litigants and states have an

interest in the prompt and efficient resolution of controversies based on state law." *Carnegie-*

*Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Here, if this Court determines that the

D.C. CPPA standing requirement gap between the federal district courts and the D.C. Circuit

Court of Appeal's decision in *Animal Legal Def. Fund*. is just too great to bridge, then the

Plaintiff requests that this case be remanded so that it and the D.C. Council can properly fulfill

legitimate interests in preventing harm to pregnant consumers caused by Defendant's deceptive

trade practices.  *See Animal Legal Def. Fund*. at *12-17 ("This report demonstrates that the

Council intended public interest organizations bringing suit under (k)(1)(D) to be free from any

requirement to demonstrate their own Article III standing . . . . Unlike in *Grayson*, we hold that

intent is now sufficiently explicit."); *see also*, *Erie* at 72-73, 78.

> [I]n the usual case in which all federal-law claims are dismissed before trial, the
> balance of factors to be considered under the pendent jurisdiction doctrine—judicial
> economy, convenience, fairness, and comity—will point toward declining to exercise
> jurisdiction over the remaining state-law claims." *Shekoyan v. Sibley Int'l*, 409 F.3d
> 414, 424 (D.C. Cir. 2005). Given the potential that some novel issues of local law
> may be raised in the wake of *In re G.K.*, 993 A.2d 558 (D.C. 2010), comity and
> judicial economy weigh in favor of remand, and there is no reason to depart from this
> typical course here. Accordingly, the Court will remand the remaining claims to the
> District of Columbia Superior Court.

*Jordan v. District of Columbia*, 161 F. Supp. 3d 45, 50 (D.D.C. 2016).

Plaintiff herewith include a case chart that summarizes the most relevant cases supporting

the finding of standing in cases similar to ours, both at the D.C. courts and federal district court

level that echoes the recent decision in *Animal Legal Def. Fund*., in order to show that this matter

is actionable, and should this Court decides to deny CLP standing once again, that this matter

ought to be remanded and permitted to proceed in D.C. Superior Court:

| Case Name | Court | Summary | Relevant Holding |
|---|---|---|---|
| *Animal Legal Def. Fund v. Hormel Foods Corp.*, 2021 D.C. App. LEXIS 254 (D.C. Sept. 2, 2021). | District of Columbia Court of Appeals | Animal welfare organization sued Hormel Foods because of the products they had mislabelled as "natural", when the products had been inhumanely and unnaturally sourced from factory-farmed animals. | The DC CPPA§ 28-3901 et seq., confers standing upon public interest organizations bringing suit on behalf of the interests of a consumer or a class of consumers, so long as they have a sufficient nexus to adequately represent those interests. D.C. Code § 28-3905(k)(1)(D), this recent addition to the CPPA conveys a clear legislative intent to modify U.S. Const. art. III's strictures with a statutory test governing public interest organizations' standing to bring a CPPA claim. |
| *Spokeo, Inc. v. Robbins, 136* S. Ct. 1540 (2016). | Supreme Court of the United States | Individual sued an internet service which had published false information about him. | If a statute violation automatically implies a concrete harm or material risk of concrete harm, even one that is "difficult to prove or measure", a plaintiff does not need to identify "any additional harm" beyond the statutory violation. |
| *Beyond Pesticides v. Monsanto Co.*, 311 F. Supp. 3d 82 (D.D.C. 2018). | United States District Court for the District of Columbia | Public interest organization sued a pesticide manufacturer for their mislabelled products, which falsely claimed a harmful toxin found in their products was not found in humans or pets. | Plaintiff successfully claimed an injury-in-fact after simply alleging that Defendant's statements about their products were false or misleading. |
| *Organic Consumers Ass'n v. General Mills, Inc.*, 2017 D.C. Super. LEXIS 4 (D.C. Super. Ct. July 6, 2017). | Superior Court of the District of Columbia, Civil Division | Three non-profit organizations brought suit against the Defendant food manufacturer, claiming that Defendant misleads consumers by marketing of some of its products as natural when in fact they contained detectable quantities of a chemical agent. | Non-profit organization that purchased products for testing purposes had standing to allege that defendant violated DC CPPA |
| *Organic Consumers Ass'n v. Bigelow Tea Co.*, 2018 D.C. Super. LEXIS 11 (D.C. Super. Ct. Oct.31, 2018). | Superior Court of the District of Columbia, Civil Division | Public interest organization sued against Defendants for making false or misleading statements about their Products which contained harmful toxins Consumers were unaware of. | Non-profit organization that purchased products for testing purposes had standing to allege that defendant violated DC CPPA |
| *Toxin Free USA v. JM Smucker Co.*, 2019 D.C. Super. LEXIS 15 (D.C. Super. Ct. Nov. 6, 2019). | Superior Court of the District of Columbia, Civil Division | Public interest organization sued against Defendants for making false or misleading statements about their Products which contained harmful toxins Consumers were unaware of. | Non-profit organization that purchased products for testing purposes had standing to allege that defendant violated DC CPPA |
| *Nat'l Consumers League v. Gerber Prods. Co.*, 2015 D.C. | Superior Court of the District of | Public interest organization sued against Defendants for | Non-profit organization that purchased products for testing |

| | | | |
|---|---|---|---|
| Super. LEXIS 10 (D.C. Super. Ct. August 5, 2015. | Columbia, Civil Division | making false or misleading statements about their Products which contained harmful toxins Consumers were unaware of. | purposes had standing to allege that defendant violated DC CPPA |
| *GMO Free USA v. Nestle Purina Petcare Co.,* 2021 D.C. Super. LEXIS 8 (D.C. Super. Ct. Apr. 6, 2021). | Superior Court of the District of Columbia, Civil Division | Public interest organization sued against Defendants for making false or misleading statements about their Products which contained harmful toxins Consumers were unaware of. | Plaintiff met Article III requirements by being a public interest organization who purchased the products of the Defendant, thereby expending their own resources. Court determined this expenditure showed Defendant's conduct had "perceptibly impaired" Plaintiffs' mission to educate the public about the dangers of artificial substances in consumer products. |
| *Children's Health Def. v. Beech-Nut Nutrition Co.*, 2020 D.C. Super. LEXIS 3 (D.C. Super. Ct. Apr. 8, 2020). | Superior Court of the District of Columbia, Civil Division | Public interest organization sued against Defendants for making false or misleading statements about their Products which contained harmful toxins Consumers were unaware of. | Non-profit organization that purchased products for testing purposes had standing to allege that defendant violated DC CPPA |
| *Nat'l Consumers League v. Bimbo Bakeries USA*, 2015 D.C. Super. LEXIS 5 (D.C. Super. Ct. Apr. 2, 2015). | Superior Court of the District of Columbia, Civil Division | Public interest organization sued against Defendants for making false or misleading statements about their Products which contained harmful toxins consumers were unaware of. | Non-profit organization that purchased products for testing purposes had standing to allege that defendant violated DC CPPA |
| *Clean Label Project Found. v. Panera, LLC*, 2019 D.C. Super. LEXIS 14 (D.C. Super. Ct. October 11, 2019). | Superior Court of the District of Columbia, Civil Division | Public interest organization sued against Defendants for making false or misleading statements about their products which contained harmful toxins consumers were unaware of. | Court found standing, and determined there was no federal question in Plaintiff's Complaint that would invoke Primary Jurisdiction Doctrine as they were not being asked to determine if toxin levels in Defendant's Products were acceptable, rather, they were simply being asked to determine if a reasonable consumer could be misled by Defendant's false statements about their Products. |

## **CONCLUSION**

For all the foregoing reasons, Plaintiff CLP respectfully requests the Court to reconsider

its Order regarding Defendant's Motion to Dismiss, or in the alternative, remand this matter.

### **Oral Hearing Requested**

Date:  October 21, 2021               */s/ Julie Oliver-Zhang*_____
                                          Julie Oliver-Zhang, Esq. (DC Bar #997183)

OLIVER-ZHANG LAW, PLLC
810 New Hampshire Avenue NW
Washington, DC 20037
P: (202) 643-1110
F: (202) 643-1596
E: Julie@oliverzhanglaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2021, a copy of Plaintiff's Motion For

Reconsideration of the Order Of Dismissal, Or In The Alternative, Remand To D.C. Superior

Court, Memorandum in Support, and Exhibits, were filed electronically with the Clerk of the

Court and served on all counsel of record and interested parties via ECF:

John Cella (DC Bar No. 1035356)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington D.C. 20001-3743
202-942-6771
john.cella@arnoldporter.com

Lori B. Leskin (*Pro Hac Vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
P: +1 212.836.8000
F: +1 212.836.8689
lori.leskin@arnoldporter.com

*Attorneys for Defendant*

/s/ Julie Oliver-Zhang_____
Julie Oliver-Zhang, Esq. (DC Bar #997183)