**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

CLEAN LABEL PROJECT FOUNDATION,    )
                                                   )
              *Plaintiff,*                 )
                                                   )
v.                                         )    **Case No. <u>1:20-cv-03229-RC</u>**
                                                   )
GARDEN OF LIFE LLC,                )
                                                   )
              *Defendant.*              )
                                                     )
_____)

## **<u>PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION</u>**

# TABLE OF CONTENTS

**ARGUMENT** ...................................................................................................................... **8**

**I.**     **Defendant Incorrectly States That the Decision In *Animal Legal Def. Fund.* Does Not Impact This Court's Analysis** ........................................................................................**8**

**II.**     **Contrary to Defendant's Arguments, This Court is Not Restricted to a Traditional Article III Standing Analysis Under D.C. Code §28-3905(k)(1)(D)** ........................................................**12**

**III.**     **The Supreme Court's Zone of Interest Doctrine Shows that Article III Standing Requirements Are Flexible and Can Be Modified and Expansive in Federal Courts** .................**15**

**IV.**     **Defendant's Incorrectly States That Plaintiff's Motion For Reconsideration is Procedurally Improper Because Plaintiff Has in Fact Shown That (1) Animal Legal Def. Fund Constitutes Intervening Change In Controlling Law Pursuant to Fed. R. Civ. P. 59(E) And (2) That Plaintiff is Permitted to Seek Reconsideration of The Final Judgment Pursuant To Fed. R. Civ. P. 60** ...............................................................................................................................**17**

     **A.**     **Rule 59(e) is applicable as Animal Legal Def. Fund constitutes intervening change in controlling law.**   17

     **B.**     **Rule 60 applies because there has been a manifest injustice and error of law and facts** .................**20**

     **C.**     **Plaintiff Requests Remand in Light of Dispositive, Intervening Law on Standing – *Animal Legal Defense Fund*** ........................................................................................................................**22**

# TABLE OF AUTHORITIES

## Cases

*American Trucking Ass'ns, Inc. v. Frisco, 358 U.S. 133 (1958)* .................................................. 21

*Animal Legal Def. Fund. v. Glickman, 154 F.3d 426 (D.C.Cir. 1998)* ................................... 16, 17

*Animal Legal Def. Fund. v. Hormel Foods Corp.*, No. 19-CV-0397, 2021 D.C. App. LEXIS 254 (D.C. Sept. 2, 2021) ........................................................................................................ passim

*Animal Welfare Institute v. Kreps, 183 U.S. App. D.C. 109, 561 F.2d 1002 (D.C.Cir. 1997)*..... 17

*Ass'n of Data Processing Service Organizations., Inc. v. Camp*, 397 U.S. 150 (1970).............. 16

*Bennet V. Donovan, 2011 U.S. Dist. Lexis 173965* ....................................................................... 19

*Bennet v. Donovan, 703. F.3d 582, 403 U.S. App. D.C. 262 (D.C.Cir. 2013)*........................... 20

*Blue v. Fremont Inv. & Loan, 584 F. Supp. 2d 10 (D.D.C. 2008)*................................................ 22

*Campbell v. Nat'l Union Fire Ins. Co., of Pittsburgh, PA, 130 F. Supp. 3d 236, 252 (D.D.C 2015)* ........................................................................................................................................ 12

*Carnegie- Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)................................................................ 22

*Dyson v. District of Columbia, 710 F.3d 415 (D.C.Cir. 2013)* ................................................... 20

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)..................................................................................... 8

*Firestone v. Firestone, 76 F.3d 1205 (D.C. Cir. 1996)*................................................................ 18

*Good Luck Nursing Home, Inc. v. Harris, 636 F.d 572 (D.C.Cir. 1980)* ..................................... 22

*Hagy v. Demers & Adam, 882 F.3d 616 (6th Cir. 2018)*............................................................... 15

*Hardin v. Kentucky Utilities Co.*, 390 U.S. 1 (1968)...................................................................... 11

*Hollingsworth v. Perry, 570 U.S. 693 (2017)* .............................................................................. 14

*Linda R. S. v. Richard D.*, 410 U.S. 614 (1973) ........................................................................... 11

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ................................................................................. 16

*Messina v. Krakower, 439 F. 3d 755 (D.C.Cir. 2006)* ................................................................. 19

*Miller v. Redwood Toxicology Lab., Inc., 688 F.3D 928 (8th. Cir. 2012)* ................................... 14

*National Mutual Insurance Co. v. Tidewater Transfer Co., 337 U.S. 582 (1949)* .................. 7, 13

*Organic Consumer Ass'n v. Hain Celestial Group, Inc.*, 285 F. Supp 3d 100 (D.D.C. 2018)....... 5

*Phoenix Restoration Grp. v. Liberty Mut. Grp., Inc.*, 2020 U.S. Dist. Lexis 22085, 2020 WL 606403 (D.D.C. 2020) ................................................................................................................. 12

*Randolph v. Ing Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1 (D.D.C. 2007)............................... 22

*Republic of Venezuela v. Philip Morris Inc., 287 F.3d 196 (D.C. Cir. 2002)* ............................ 22

*Ross v. AXA Equitable Life Ins. Co.*, 80 F. App'x 41 (2d Cir. 2017).......................................... 14

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ............................................................................... 11

*Smith v. City of Chicago*, 2019 U.S. Dist. Lexis 72345 (N.D. Ill. 2019)..................................... 19

*Spokeo, Inc. v. Robbins, 136* S. Ct. 1540 (2016) .................................................................... 9, 10

*Thompson v. North American Stainless, LP*, 562 U.S. 170, (2011).............................................. 16

*Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205 (1972)* ................................................. 11

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................................................... 11

## Statutes

D.C. Code § 28-3904 ...................................................................................................................... 10

D.C. Code §28-3905 (k)(1)(D) ................................................................................................ passim

Fed. R. Civ. P. 59(e) ............................................................................................................. 9, 18, 21

Fed. R. Civ. P. 60 ...................................................................................................................... 18, 21

**COMES NOW** the Plaintiff, Clean Label Project Foundation ("Plaintiff" or "CLP"), by and through counsel, respectfully submits this Reply to Defendant Garden of Life's Opposition to Plaintiff's Motion for Reconsideration and moves this Honorable Court to grant Plaintiff's Motion for Reconsideration of the Order of Dismissal, or in the Alternative, Remand to D.C. Superior Court, and as grounds therefore state:

## INTRODUCTION

In Defendant's Opposition to Plaintiff's Motion for Reconsideration, Defendant incorrectly argues that (1) the recent District of Columbia Court of Appeals decision in *Animal Legal Defense Fund v. Hormel Foods Corp.*, No. 19-CV-0397, 2021 D.C. App. LEXIS 254 (D.C. Sept. 2, 2021) does not impact this Honorable Court's standing analysis on reconsideration, (2) CLP's Motion for Reconsideration is procedurally improper, and (3) that should this Court find that CLP has standing under federal law, it should still dismiss this case due to First Amendment and primary jurisdiction grounds.

Defendant's entire Opposition hinges upon its refusal to acknowledge new intervening and controlling case law while hoping that this Court would do the same. Yet, in order to apply the correct standard in evaluating the Plaintiff's standing in federal court, this Honorable Court must consider the modified Article III standing requirements affirmed by the D.C. Court of Appeals in *Animal Legal Defense Fund*, 2021 D.C. App. LEXIS 254, at *12-13, decided on September 2, 2021. *See* FRCP 59(e). This intervening, controlling case law was overlooked as it was new and unknown at the time when the Court issued its September 23, 2021 Order [ECF 15] denying standing to the Plaintiff. As of the writing of this Reply in November of 2021, *Animal Legal Defense Fund* was still an unpublished opinion that has not yet received a reporter citation due to

its recency. 2021 D.C. App. LEXIS 254. Accordingly, Plaintiff CLP has representational standing[1] afforded by the District of Columbia Consumer Protection Procedures Act ("D.C. CPPA"), and should be allowed to proceed under D.C. Code §28-3905 (k)(1)(D). *See Animal Legal Def. Fund*., 2021 D.C. App. LEXIS 254, at *8-23.

Plaintiff CLP has D.C. CPPA standing to sue under both the traditional Article III standing analysis and the modified Article III analysis upheld in *Animal Legal Defense Fund*, which confers "'maximum standing' to public interest organizations . . . the full extent of standing as may be recognized by the District of Columbia courts . . . .". *See id*.; *see also*, *Grayson v. AT&T Corp*., 15 A.3d 219, 232, 247-250 (D.C. 2011) (en banc); *and see Organic Consumers Ass'n v. Hain Celestial Grp*., Inc., 285 F. Supp. 3d 100, 102-03 (D.D.C. 2018) (finding injury-in-fact where plaintiff had to expend more resources on programmatic efforts to counteract defendant's misinformation regarding synthetic ingredients in food products). Plaintiff CLP is a 501(C)(3) non-profit and a public interest organization whose mission is to promote and educate consumers regarding food labeling truth and transparency, allowing them to make data-based, educated purchasing decisions in order to prevent harm to consumers. *See* Compl. ¶¶ 37-41; *see also*, Exhibit 1, Affidavit of Jaclyn Bowen, MPH, MS, Executive Director of CLP ¶¶ 2-16. As a result of the Defendant's untruthful marketing of its Products containing heavy metals, pesticides, and BPA, CLP has indeed suffered an injury-in-fact in connection to its programs offered to consumers and qualifies for standing, even under the old standing analysis in *Grayson v. AT&T Corp*., 15 A.3d at 232, 247-250 (granting

---

[1] While CLP also has organizational standing under Section (k)(1)(C) as a testing, nonprofit organization that actually tested the Defendant's Products at issue via ISO 17025 accredited, independent laboratories, this reconsideration focuses on the modified Article III standing requirements established in *Animal Legal Def. Fund*., 2021 D.C. App. LEXIS 254, at *8-23, the new, intervening, controlling law in this matter. Defendant's Products that were tested in question are: (1) Garden of Life Vitamin Code Raw Prenatal (180 ct); (2) Garden of Life MyKind Organics Prenatal Multi - Certified Organic Whole Food (90 ct); (3) Garden of Life Dr. Formulated Probiotics - Once Daily Prenatal (30 ct); (4) Garden of Life Oceans Mom Prenatal DHA (30 ct); (5) Garden of Life MyKind Organics Prenatal Once Daily (30 ct); (6) Garden of Life MyKind Organics - Prenatal Once Daily (90 ct); (7) Garden of Life MyKind Organics Prenatal (30 ct) [hereinafter "Products"].

standing when Grayson's right to be free from unlawful trade practices, similar to CLP's enforceable right to truthful information from merchants derived from the D.C. CPPA, was violated by the defendant's false advertising, constituting injury-in-fact); *see also*, Exhibit 1, Bowen Affidavit, ¶¶ 2-16 ("Because of Garden of Life's false and misleading trade practices, CLP has to devote substantial additional organizational resources to counteract the misinformation, testing the adulterated products, warning customers about the contaminants, educating consumers about this and other "clean" and "healthy" claims, advocating for stronger standards for the 'clean' and 'healthy' claims that fall in line with consumer expectations. This misleading advertising of Garden of Life's prenatal vitamins supplement products has caused CLP to divert its organizational resources away from other priorities and campaigns that could have protected more consumers and legitimate competitors."); *and see*, *Grayson*, 15 A.3d at 246 ("'For purposes of ruling on a motion to dismiss for want of constitutional standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.' Before ruling on the motion to dismiss, 'it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.'"). Under *Animal Legal Defense Fund's* new standard, Plaintiff has standing as CLP definitively meets the further relaxed, expansive, and modified Article III standing analysis encompassed in the three-pronged statutory test, even without considering CLP's injury-in-fact from combating the Defendant's false advertising campaign that drains its resources for other key programs. 2021 D.C. App. LEXIS 254, at *8-23.

Moreover, Defendant failed to address the uniqueness of Article I courts entirely, where D.C. local courts may remove prudential limits on Article III standing requirements because they were created pursuant to congressional judicial powers under Article I; Defendant attempts to skirt how this difference impacts the Section k(1)(D) standing determination for this Court. *See Animal*

*Legal Def. Fund*, 2021 D.C. App. LEXIS 254, at *9-17. Under *National Mutual Insurance Co. v. Tidewater Transfer Co.*, the Supreme Court made clear that Article I powers can confer to courts existing under Article III, such as this Honorable Court, judicial functions such as entertaining even a non-Article III suit. 337 U.S. 582, 591-94 (1949). This Court is empowered by Article I to proceed with granting CLP standing in this case under the modified Article III standing requirements as pronounced in *Animal Legal Defense Fund*, 2021 D.C. App. LEXIS 254, at *15-22. CLP meets the three-pronged, modified Article III standing requirements under the D.C. CPPA as it is a (1) public interest organization that has (2) identified a class of consumers of pregnant women whose statutory rights to be free from false advertising was violated by the Defendant's contaminated prenatal vitamins marketed as "clean" and "beneficial", and (3) has a sufficient nexus to adequately represent these consumers' interests as an advocate for clean foods and truthful labeling. *See Animal Legal Def. Fund.*, 2021 D.C. App. LEXIS 254, at *15-22; *see also* Compl. ¶¶ 25, 47-111, 135, 138.

Importantly, the new holding of *Animal Legal Defense Fund* that expands and grants D.C. CPPA standing to include public interest organizations with a modified Article III standing test ought to be given proper consideration, or the statute will be partially disabled in federal court to qualifying claimants under D.C. Code §28-3905(k)(1)(D). 2021 D.C. App. LEXIS 254, at *3 ("That recent addition to the CPPA conveys a clear legislative intent to modify Article III's strictures with a statutory test governing public interest organizations' standing to bring a CPPA claim. Because ALDF meets that statutory test, it has standing to sue without regard to whether it also satisfies traditional Article III standing requirements."). Here, Defendant is pressing the Court to ignore this recent, dispositive decision that unequivocally changed the D.C. CPPA's standing requirements. Should this Court decide not to exercise subject matter jurisdiction over this case

even in light of *Animal Legal Defense Fund*, then Plaintiff respectfully requests that this case be remanded to D.C. Superior Court, where the Plaintiff originally filed this case and is entitled to its day in court.

## **ARGUMENT**

### I. **Defendant Incorrectly States That the Decision In *Animal Legal Def. Fund.* Does Not Impact This Court's Analysis**

*Animal Legal Defense Fund* constitutes significant, intervening change in controlling law concerning the D.C. CPPA, modifying the legal analysis regarding Article III standing requirements under D.C. Code §28-3905(k)(1)(D), and therefore warrants reconsideration of this Court's September 23, 2021 Order [ECF 15] denying standing. 2021 D.C. App. LEXIS 254, at *3.

Defendant also misconstrues CLP's arguments by stating that Plaintiff's theory is that "this Court is sitting in diversity and should therefore apply state law, and that if that is done, *Animal Legal Defense* demonstrates that Plaintiff has standing to sue." *See* Defendant's Opp. to Mot. for Reconsideration at 2. Plaintiff cites to the *Erie Doctrine* to demonstrate the longstanding principle that it is improper for a federal court to create a disparate line of cases that diverges from the state when it is interpreting that state's substantive law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 72-73 (1938). CLP again emphasizes that there is no federal question alleged in the Complaint nor is there diversity in this matter as the amount in controversy is insufficient. Therefore, Plaintiff requests that if this Court still declines to exercise subject matter jurisdiction over this case even in light of *Animal Legal Defense Fund*, the controlling law from D.C.'s highest court, then this case should be remanded to D.C. Superior Court. *See* Pl's Memo. in Support of Mot. for Reconsideration at 12. However, CLP contends that *Animal Legal Defense Fund* is at the heart of this standing dispute, and this Honorable Court has the discretion to expand beyond traditional

Article III requirements in considering D.C. CPPA cases seeking standing under Section (k)(1)(D) in accordance with this new, controlling law. 2021 D.C. App. LEXIS 254, at *3, 9-23.

Defendant further misstates Plaintiff's arguments regarding *Spokeo, Inc. v. Robbins,* 136 S. Ct. 1540 (2016). *See* Def.'s Opp. to Mot. for Reconsideration at 3. Plaintiff's position is that *Spokeo* supports and does not contradict the modified Article III standing analysis pronounced in *Animal Legal Defense Fund* as the Defendant claims. *See Spokeo,* 136 S. Ct. at 1549-50; *see also*, *Animal Legal Def. Fund,* 2021 D.C. App. LEXIS 254, at *3, 9-23; *and see*, Def. Opp. to Mot. for Reconsideration at 3. The error of law, however, that does trigger reconsideration under Rule 59(e) would be misapplying *Spokeo* to invalidate the modified Article III standing statutory test in *Animal Defense Fund* and D.C. Code §28-3905(k)(1)(D) under the 2012 Amendments. *See Spokeo, 136* S. Ct. at 1549-50; FRCP 59(e). The Supreme Court in *Spokeo* held that an injury-in-fact can be statutorily elevated and redefined by Congress, where none may have existed before:

> Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U. S., at 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351. Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id*., at 580, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (opinion concurring in part and concurring in judgment).

*See Spokeo* at 1549-50.

*Spokeo* stated that if a statute violation automatically implies a concrete harm or material risk of concrete harm, even one that is "difficult to prove or measure", a plaintiff does not need to identify "any additional harm" beyond the statutory violation. *See Spokeo* 136 S. Ct. at 1549-50. Plaintiff has met the requirement for standing in accordance with *Spokeo* under *Animal Legal Defense Fund*. *See Spokeo* at 1549-50 ("'Concrete'" is not, however, necessarily synonymous

with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete . . . . In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. [It] is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."); *compare with*, *Animal Legal Defense Fund*, 2021 D.C. App. LEXIS 254, at *2-5, 16-23, 26-29 (discussing in detail Animal Legal Defense Fund (AIDL)'s history in advocating for consumer awareness of animal rights, where a public interest organization with a mission and active work that has sufficient nexus (close relationship) to the types of harm suffered by consumers protected under the D.C. CPPA, is itself harmed and has standing to sue because Hormel's false advertising "conflicts" the types of interest and mission promoted by AIDL).

Plaintiff CLP is a non-profit organization with a statutory legal right to "be free from improper trade practices", as well as a right to "truthful and non-misleading information" under D.C. Code §§ 28-3904 and 28-3905(k)(1)(D). CLP actively uncovers, raises public awareness, and fights against deceptive advertising harmful to consumers with its own institutional resources, such as when the Defendant misleads pregnant women to purchase prenatal vitamins laced with heavy metals, pesticides and BPA marketed as "clean". This satisfies the requirement of a statutory violation that implies a concrete harm, even if intangible, under *Spokeo*, which requires no further allegations of actual harm beyond the invasion of CLP's statutory private right. *See Animal Legal Defense Fund*, 2021 D.C. App. LEXIS 254, at *2-5, 11-23, 26-29; *see also*, *Spokeo* at 1549-53; *see also*, Compl. ¶¶ 132-35; *and see* Exhibit 1, Bowen Affidavit ¶¶ 2-16. Additionally, the Supreme Court has also repeatedly stated that "the actual or threatened injury required by Art. III may exist solely by virtue of "statutes creating legal rights, the invasion of

which creates standing . . .". *See Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 732 n. 3 (1972); *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 212 (1972); *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973); *Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 6 (1968). Plaintiff's statutory rights under the D.C. CPPA have been infringed upon by Defendant's advertising practices and is actionable.

Defendant continues to insist on a standing analysis that is outdated, and neither considers nor confronts the modifications to the Article III standing analysis specified in *Animal Legal Defense Fund*. 2021 D.C. App. LEXIS 254, at *9-23. As well pleaded in the complaint, CLP has standing under D.C. Code §28-3905 (k)(1)(D). *See* Compl. ¶¶ 37-41. Section (k)(1)(D) affords standing to public interest organizations to bring an action seeking relief on behalf of a consumer or class of consumers. *See* D.C. CPPA §28-3905(k)(1)(D). Plaintiff CLP is a 501(C)(3) non-profit, as well as a public interest organization whose mission is to promote and educate consumers regarding food labeling truth and transparency to support consumers' right to know what is in the products they purchase, allowing them to make data-based, educated purchasing decisions. *See* Compl. ¶¶ 39-41; *see also*, Exhibit 1, Bowen Affidavit ¶¶ 2-16. Given that mission and specific interest in the truthful marketing of prenatal vitamin products, Plaintiff initiated and authorized the purchase of the Defendant's and its competitors' products to investigate the category of prenatal vitamins. It tested the purity of Defendant's products, discovered that its products contained several toxins harmful to fetal development, and then sought to represent the interests of a distinct, vulnerable population that bought Defendant's products based on its deceptive advertising under D.C. Code §28-3905 (k)(1)(D). *See Compl. ¶*25, 47-111. CLP demonstrated a "close relationship" and sufficient nexus between its organizational mission and the identifiable, misled, and harmed D.C. consumers who purchased Defendant's tainted prenatal vitamins to qualify for standing. *See*

*Animal Legal Def. Fund*, 2021 D.C. App. LEXIS 254, at *3, 9-23; *Spokeo* at 1549. Defendant did not challenge that CLP indeed met the three-pronged Section (k)(1)(D) standing test under *Animal Legal Def. Fund*, 2021 D.C. App. LEXIS 254. *See* D.C. Code §28-3905 (k)(1)(D).

## II. Contrary to Defendant's Arguments, This Court is Not Restricted to a Traditional Article III Standing Analysis Under D.C. Code §28-3905(k)(1)(D)

Defendant has failed to refute the specific holding concerning standing in *Animal Legal Defense Fund*, 2021 D.C. App. LEXIS 254, at *3, 9-22. Instead, Defendant merely asserts, without any basis, that the aforementioned case is irrelevant because it is from the D.C. Court of Appeals, yet this Court has in the past routinely considered the edicts of the D.C. Court of Appeals to interpret standing requirements under the D.C. CPPA. *See Phoenix Restoration Grp. v. Liberty Mut. Grp., Inc.*, No. 18-2121, 2020 U.S. Dist. Lexis 22085 (D.D.C. 2020) at *11 (quoting *Grayson* when considering plaintiff's D.C. CPPA suit against the defendant insurance company for misrepresentation of insurance policies); *see also Campbell v. Nat'l Union Fire Ins. Co., of Pittsburgh, PA,* 130 F. Supp. 3d 236, 252 (D.D.C 2015) (quoting *Grayson* in finding that the misrepresentations from the defendant insurance company's program leading to unauthorized charges against the plaintiff constituted injury-in-fact for standing purposes.). In doing so, Defendant induces this Honorable Court to disregard modifications to Article III standing requirements when applying Section k(1)(D), and to ignore controlling legal precedent. Under *Animal Legal Defense Fund*, CLP clearly meets the Section (k)(1)(D) statutory test and has standing to bring suit against Defendant. *See* Pl's Memo. in Support of Mot. for Reconsideration at 19-22. Yet, Defendant has not provided any reasoning beyond an obtuse reading of federalism to disprove Plaintiff's standing under *Animal Legal Defense Fund*, and thus concedes that if this Court finds *Animal Legal Defense Fund* to be applicable, then CLP would qualify under the modified Article III standing requirements based on the Complaint.

Defendant then cited to a plethora of case law it deems relevant, but purposefully failed to acknowledge the holding in *National Mutual Insurance Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 591- 94 (1949). While D.C. courts generally follow Article III standing requirements, they are not compelled to do so as they were created pursuant to congressional judicial powers under Article I. *See* Pl's Memo. in Support of Mot. for Reconsideration at 17-18. Therefore, this Honorable Court is entitled to adopt a modified Article III standing requirement when considering non-traditional standing requirements authorized by Article I under D.C. statutes. *Tidewater* at 595 ("Thus, the Court held that Congress had power to authorize an Art. III court to entertain a non - Art. III suit because such judicial power was conferred under Art. I. Indeed, the present Court has assumed, without even discussion, that Congress has such power."). Again, Defendant's narrow interpretation of what this Court must do when it comes to standing is erroneous as it fails to address the fluidity afforded to the D.C. Council and the D.C. Court of Appeals when defining the modified Article III standing requirements within the D.C. CPPA; this power to expand the traditional Article III standing requirement is buttressed by the Supreme Court's decree in *Tidewater*, allowing federal courts to hear these actionable cases granted standing under Article I. *See id.*; *see also*, *Animal Legal Def. Fund*, 2021 D.C. App. LEXIS 254, at *9-23 ("The District of Columbia's local courts, 'established by Congress pursuant to Article I, are not [constitutionally] bound by the requirements of Article III.' . . . . that prudential judgment is subject to legislative override, and nobody 'questions the [D.C.] Council's authority to remove prudential limits on standing.').

Defendant cites to distinguishable cases that fail to show that this Court is compelled to accept traditional Article III standing requirements without room for modification or interpretation. For example, the issues regarding standing in *Hollingsworth v. Perry* are

inapplicable here as that case concerned the standing of official proponents of a California state law, Proposition 8, that was declared unconstitutional. 570 U.S. 693, 707 (2013). The Supreme Court found that the plaintiffs did not have standing to vindicate the constitutionality of the same-sex marriage ban as a mere interest in the initiative's validity, and that was insufficient to grant standing to supporters of a bill that had been enacted. *Id.* Compared to the California law at issue in *Hollingsworth*, Section (k)(1)(D) of the D.C. CPPA specifically affords CLP statutory standing as a non-profit and special interest group with a nexus to the harmed consumers. Defendant also cites to *Miller v. Redwood Toxicology Lab., Inc.*, where the plaintiff's standing argument failed because he was unable to that show his injury was caused by the defendant and not a third party. 688 F.3d 928, 935 (8th Cir. 2012) ("Even presuming these are concrete injuries contemplated by the amended complaint, and purportedly sufficient for purposes of Article III, the complaint nonetheless fails…Miller's claims falter in federal court on the matter of causation."). The difference between the *Miller* case and this matter is evident as Plaintiff commissioned the purchase and testing of Defendant's Products, and there is no third-party actor. *Ross v. AXA Equitable Life Ins. Co.*, is also distinguishable from this case as the *Ross* court Ruled that plaintiffs did not have Article III standing because their injury-in-fact arguments were too speculative as they relied, in part, upon the occurrence of an economic downturn in the future. 680 F. App'x 41, 44-46 (2d Cir. 2017). CLP differs from the *Ross* plaintiffs in that Plaintiff has demonstrated that concrete injury already occurred where (1) CLP commissioned the purchase and testing of Defendant's Products that were found to be adulterated with heavy metals, pesticides, and BPA - with some contaminants ranking as one of the highest in concentration per serving when compared to competitors in the same category; (2) Defendant's wrongdoing impaired CLP's programs and missions; and (3) Defendant deceived D.C. consumers, with whom CLP has a nexus, when they

made the purchase. *See* Compl. ¶¶ 100-111; *see also*, *Animal Legal Def. Fund*, 2021 D.C. App. LEXIS 254, at *8-23. Lastly, *Hagy v. Demers & Adam* concerned federal law, the Fair Debt Collection Practices Act and not a state statute, whereas Plaintiff CLP brought this claim under the D.C. CPPA in response to Defendant's actions in the District of Columbia. 882 F.3d 616, 618 (6th Cir. 2018).

### III. The Supreme Court's Zone of Interest Doctrine Shows that Article III Standing Requirements Are Flexible and Can Be Modified and Expansive in Federal Courts

Defendant argues that CLP "misunderstands" the principles of Constitutional law and federalism, and thereby asks that this Court disregard CLP's Article III arguments. In doing so, Defendant is essentially attempting to persuade this Court to neglect decades of modifications to standing requirements. Clearly, Defendant does not want this Court to apply the correct and current D.C. CPPA standing analysis found in *Animal Legal Defense Fund* as it is unfavorable to their position. 2021 D.C. App. LEXIS 254, at *15-22. Upon further examination of the evolutionary history of Article III standing requirements, it is evident that this Court is entitled to consider the recent and expansive legal holding concerning this matter.

Article III standing requirements have been reshaped time and time again. Notably, the Supreme Court expanded traditional Article III standing requirements by applying a "zone of interest" test. For example, in the landmark case *Ass'n of Data Processing Service Organizations., Inc. v. Camp*, 397 U.S. 150, 152 (1970), the Supreme Court advanced an ongoing trend to relax federal standing requirements. In its analysis the Supreme Court stated:

> The "legal interest" test goes to the merits. The question of standing is different. It concerns, apart from the "case" or "\controversy" test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

*Id.* at 153.

The zone of interest theory has subsequently been applied to other cases in federal courts. *See Massachusetts v. EPA*, 549 U.S. 497, 517-518 (2007) (where the Supreme Court held that the State of Massachusetts had standing to obtain review of the EPA's decision to not regulate greenhouse gases, in part, because Congress may relax redressability and immediacy standards in the law of standing requirements where procedural injury is concerned.); *see also, Thompson v. North American Stainless, LP*, 562 U.S. 170, 171 (2011) (holding that the fiancé of a woman who filed a sex discrimination charge with the Equal Employment Opportunity Commission against mutual employer had standing in his Title VII suit against the employer because he fell within the "zone of interests" protected by Title VII, although he did not personally suffer discrimination or was in fact injured.).

The expansion of standing requirements for environmental suits further demonstrates the shift in modifying Article III standards. For example, in *Animal Legal Def. Fund. v. Glickman*, the court found that the plaintiff, an animal welfare advocate, had standing to sue the U.S. Department of Agriculture under the Administrative Procedure Act for failing to adopt sufficient standards to protect the well-being of animals at a game farm as required by the Animal Welfare Act.  *See Glickman*, 154 F.3d 426, 432-433 (D.C. Cir. 1998) (en banc).  The advocate had visited the game farm nine (9) times and saw that many of the animals were kept in inhumane conditions – he further expressed his intention to revisit the game farm. *Id.* at 430. In its analysis, the U.S. Court of Appeals for the D.C. Circuit explained that the advocate had standing as his "aesthetic interests" were legally protected, where he suffered injury in both a personal and individual way in connection to the department's failure to enforce the Act.  *Id.* at 433. The court stated: "The Supreme Court has repeatedly made clear that injury to an aesthetic interest in the observation of

animals is sufficient to satisfy the demands of Article III standing." *Id.* at 432. *See also Animal Welfare Institute v. Kreps*, 561 F.2d 1002, 1007-1010 (D.C. Cir. 1997) (finding standing where plaintiff organizations' interest in activities of seeing, photographing and enjoying Cape fur seals in their natural habitat were impaired by defendant Secretary of Commerce's decision to waive the moratorium on the importation of marine mammals imposed by the Marine Mammal Protection Act, thereby allowing the harvest of baby seals.). Like Plaintiff CLP, the litigants in these environmental suits merely witnessed, advocated, and only suffered injury in the sense that the interest they promoted, such as truthful advertising or preservation of wildlife, sustained redressable harm under a statute.

These zone of interest cases concern administrative action; however, they illustrate the ongoing trend of relaxing and modifying the traditional Article III requirements in federal courts. The D.C. CPPA has undergone modifications and amendments as recently as 2012. The legislative intent to modify Article III requirements to allow organizations like CLP to bring suit in consumer protection matters like this one is unambiguous. *Animal Legal Defense Fund*, 2021 D.C. App. LEXIS 254, at *3, 16-18. Neglecting this recent precedent effectively creates a judicial barrier against qualifying claimants with good standing from accessing federal courts under the D.C. CPPA.

IV. **Defendant's Incorrectly States That Plaintiff's Motion For Reconsideration is Procedurally Improper As Plaintiff Has in Fact Shown That (1)** *Animal Legal Defense Fund* **Constitutes Intervening Change in Controlling Law Pursuant to Fed. R. Civ. P. 59(E), and (2) That Plaintiff is Permitted to Seek Reconsideration of The Final Judgment Pursuant To Fed. R. Civ. P. 60.**

A. **Rule 59(e) is applicable as Animal Legal Def. Fund constitutes intervening change in controlling law.**

Defendant's argument that Fed. R. Civ. P. 59(e) is not applicable because CLP's Motion to Reconsider does not identify any intervening change in law, no error of law or fact, and no

manifest injustice is a willful exercise in remaining blind to facts. In CLP's Motion to Reconsider, Plaintiff clearly identifies *Animal Legal Defense Fund* as the intervening change in controlling law concerning the D.C. CPPA, warranting this Honorable Court's reconsideration. 2021 D.C. App. LEXIS 254, at *3, 9-23. According to the *Animal Legal Defense Fund* decision, Plaintiff CLP's standing should be protected under the D.C. CPPA, specifically §28-3905(k)(1)(D), and the case should be allowed to proceed. *See Animal Legal Def. Fund* at *2-17.

Fed. R. Civ. P. 59(e) permits a party to seek reconsideration of a final judgment within 28 days once that judgment has been made by the Court. Fed. R. Civ. P. 59(e). The four basic grounds for Rule 59(e) motions are manifest errors of law or fact, newly discovered or previously unavailable evidence, prevention of manifest injustice, and ***intervening change in controlling law***. (emphasis added). *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). This Court's inclusion of *Animal Legal Defense Fund* in reconsidering standing in this matter would indeed prevent manifest injustice and errors of law as to do otherwise would be depriving the Plaintiff proper standing to bring this action in federal court. 2021 D.C. App. LEXIS 254, at *3, 9-23.

Fed. R. Civ. P. 60 permits a party to seek reconsideration of a final judgment either (a) to correct a mistake arising from an oversight or omission or (b) to seek relief from a judgment or order due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct; (4) void judgment; (5) satisfied, released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(a).

Accordingly, the *Animal Legal Defense Fund* decision precedes this Court's September 23, 2021 Order [ECF 15] by three (3) weeks (and was an unpublished decision without reporter citation at the time when this Court's Order was issued), was issued nine (9) months after CLP

filed its Opposition to Defendant's Motion to Dismiss in December 14, 2020, and long after the surreply period has passed. As such, this Honorable Court did not have the opportunity to address this new, crucial, controlling, intervening law in its Order [ECF 15] and it was omitted from consideration. *See Smith v. City of Chicago*, 2019 U.S. Dist. Lexis 72345, 2019 WL 1923404 *at 9 (N.D. Ill. 2019) (granting the plaintiff's motion for reconsideration as a result of intervening case law that was decided on January 2, 2019, whereas defendant's motion to dismiss was granted a day later on January 3, 2019.); *see also*, FRCP 60(a) (mistake of omission). Moreover, the cases that Defendant cites to arguing that reconsideration is inappropriate are either distinguishable from the case-at-hand or support the Plaintiff's argument. In *Messina v. Krakower*, the court agreed with the district court's denial of the plaintiff's motion to vacate pursuant to 59(e) as the motion "did nothing more than 'rely on the same arguments that she originally made'" and where the plaintiff did not cite to any intervening change in law. 439 F.3d 755, 759 (D.C. Cir. 2006). Here, CLP has in fact cited to *Animal Legal Defense Fund v. Hormel Food Corp.*, a major intervening change in law directly superseding the prior standing requirements under §28-3905(k)(1)(D), issued from D.C.'s highest court.  CLP was unable to originally cite to the aforementioned case in its Opposition to the Defendant's Motion to Dismiss as the District of Columbia Court of Appeals did not decide the case until September 2, 2021, and the decision remained unpublished until November of 2021. Additionally, in *Bennett V. Donovan,* the court denied plaintiff's Rule 59(e) motion, where the plaintiffs failed to establish standing because they did not show that any relief provided by the Secretary of the U.S. Department of Housing and Urban Development would affect the potential actions of independent third-party lenders to suspend or cancel foreclosure procedures.  2011 U.S. Dist. Lexis 173965 (D.D.C. 2011), at *2-6. However, Defendant Garden of Life left out that on appeal, the court found that relief was likely, and that appellants did have

standing. *See*, *Bennett v. Donovan*, 703. F.3d 582, 590, 403 U.S. App. D.C. 262 (D.C.Cir. 2013). In contrast, CLP has clearly outlined the remedies that may immediately provide redress to the Defendant's, and no other actors, violations. Specifically, Defendant's Products contained toxic heavy metals, BPA, and pesticides, contrary to their claims that constituted a misleading advertising campaign of clean, healthy, non-artificial, nourishing nutrition in its Products that support the pregnant mother, the fetal brain, and other fetal developments that are superior to other competing brands. In response to the Defendant's actions, Plaintiff requests that Defendant's conduct be enjoined and provide corrective advertising that restores D.C. residents. Further, *Dyson v. District of Columbia*, is also distinct from the case at hand as reconsideration was denied because the plaintiff did not file a timely charge with the Equal Employment Opportunity Commission. 710 F.3d 415, 422 (D.C. Cir. 2013). In sum, Defendant is evidently attempting to evade the pertinent holding in *Animal Legal Defense Fund* when Plaintiff is entitled to reconsideration under FRCP 59(e).

**B. Rule 60 applies because there has been a manifest injustice and error of law and facts**

Defendant's assertion that Rule 60 does not apply is incorrect as CLP's Memorandum in Support of Motion for Reconsideration clearly explains the "mistake." There has been a manifest injustice and error of law and facts in that Defendant's Motion to Dismiss and Reply misstating the facts of Plaintiff's claim and misapplying legal standards concerning the proper standing for both a nonprofit testing organization and a public interest organization to sue under the D.C. CPPA that resulted in errors of law and facts in the September 23, 2021 Order. *See* Pl.'s Memo. in Support of Mot. for Reconsideration at 9.

Specifically, Defendant misstated that CLP did not purchase the products. *See* Defendant's Reply in Support of Def.'s Mot. to Dismiss at 5. This statement is not factually true as Plaintiff

previously stated that they requested and authorized the purchase of Defendant's Products. *See* P's Reply in Opp. to Defendant's Mot. to Dismiss at 6 n.7.  Defendant also wrongfully stated that Plaintiff suffered no "perceptible impairment." *See* Def.'s Mot. to Dismiss at 5.  This too is a false statement because due to Defendant's untruthful marketing of its prenatal vitamin products containing heavy metals, pesticides, and BPA, CLP has indeed suffered an injury-in-fact in connection to its programs[2] offered to consumers. Further, Defendant also stated that self-inflicted harm does not constitute an injury. *See* Def.'s Mot. to Dismiss at 10.  Yet, that is not the law, as no testing organization like CLP could then ever qualify for standing under Section (k)(1)(C) as the onus to test is always voluntary and "self-inflicted", which would render this provision of the D.C. CPPA invalid and unenforceable.  *See* D.C. Code § 28-3905 (k)(1)(D).  To not reconsider and apply the new legal standard under *Animal Legal Defense Fund* would deprive CLP of proper standing due to many mistakes of law and facts, and be manifestly unjust.  *See* FRCP 59(e) & 60. 2021 D.C. App. LEXIS 254, at *3, 9-23.

Moreover, some of the cases Defendant cites to demonstrate the willingness of courts to grant Rule 60 motions. For example, in *American Trucking Ass'ns, Inc. v. Frisco*, the Supreme Court considered whether the Interstate Commerce Commission had the power to modify certificates of public convenience and necessity that contain inadvertent errors, which the court found that it did on appeal. 358 U.S. 133, 145 (1958). In another Rule 60(b) motion brought by a government defendant, the government later discovered that the plaintiff nursing home may have committed Medicare fraud, where the United States Court of Appeals for the D.C. Circuit stated:

---

[2] Plaintiff CLP is a 501(C)(3) non-profit and a public interest organization whose mission is to promote and educate consumers regarding food labeling truth and transparency, allowing them to make data-based, educated purchasing decisions in order to prevent harm to consumers, and Defendant's D.C. CPPA violations directly contravenes CLP's programs and efforts to promote consumer interests.  *See* Compl. ¶¶ 39-41; *see also*, Exhibit 1, Bowen Affidavit ¶¶ 2-16.

In this case, then, the interest that litigation must someday end was only slightly impinged, while the countervailing **interest that justice be done** was seriously at stake. The district court was well justified in deciding to give this case a strong second look." (Emphasis added.)

*Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 574, 577-78 (D.C. Cir. 1980).

### C. Plaintiff Requests Remand in Light of Dispositive, Intervening Law on Standing – *Animal Legal Defense Fund*

This case was first filed in the Superior Court of District of Columbia on August 25, 2020. Should this Court find it has no federal subject matter jurisdiction over this case, the most appropriate course of action would be to remand the case back to the Superior Court of District of Columbia. *See Republic of Venezuela v. Philip Morris Inc.,* 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c)) (remanding the cases to state court from which they were removed because the court lacked federal subject matter jurisdiction over them); *see also Randolph v. Ing Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 10-11 (D.D.C. 2007) ("When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case."); *see also Blue v. Fremont Inv. & Loan*, 584 F. Supp. 2d 10, 11-12 (D.D.C. 2008)(the court remanded the case pursuant to 28 U.S.C.S. § 1447(c) as no federal questions were raised); 28 U.S. Code § 1447(c) (lack of subject matter jurisdiction).

Simply dismissing this case robs the Plaintiff of due process. *See Carnegie- Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (where the Supreme Court held that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate). Here, the proper determination of whether this Court should retain jurisdiction over this case matter cannot be discharged without considering *Animal Legal Defense Fund*. *See Animal Legal Defense Fund* at *3, 12-17. It is clear that the local D.C. courts and the D.C. Council wish to protect D.C. residents

from harmful advertising practices by affording standing to non-profit organizations that have the adequate resources and capacity to sue on their behalf. *See Animal Legal Defense Fund.* at \*12-17 ("This report demonstrates that the Council intended public interest organizations bringing suit under (k)(1)(D) to be free from any requirement to demonstrate their own Article III standing . . . . Unlike in *Grayson*, we hold that intent is now sufficiently explicit.").

Defendant claims that Plaintiff had nine months to seek a remand after the Motion to Dismiss was filed. *See* Defendant's Opp. to Mot. for Reconsideration at 7. However, litigants should not be penalized for pursuing standing in federal court in good faith based on meritorious arguments in accordance with the then-available case law, and reasonably waiting for a ruling from the Court, which took nine months.

In conclusion, Plaintiff is asking this Court to reassess CLP's standing under the modified Article III standing analysis. If the Court still declines to exercise jurisdiction under the new framework laid out in *Animal Legal Defense Fund*, to then grant Plaintiff the opportunity to proceed in D.C. Superior Court, in which *Animal Legal Defense Fund* provides clear, robust standing to CLP to prosecute this case against the Defendant – expansive protections that did not previously exist under Section k(1)(D). *See Animal Legal Def. Fund* at \*3, 9-23. Plaintiff's request for remand is not a new argument, but a request for the proper remedy, now definitively available with the D.C. Superior Court for Plaintiff to proceed under the new intervening, controlling law established in *Animal Legal Defense Fund's* modified Article III standing framework. Finally, if this Court does grant standing, Plaintiff requests the Court to review the facts relevant to Defendant's argument regarding First Amendment and primary jurisdiction in a light most favorable to CLP and deny the Defendant's Motion to Dismiss [ECF 7].

**WHEREFORE**, Plaintiff respectfully requests that the Court reconsider its Order regarding Defendant's Motion to Dismiss, or in the alternative, remand this matter.

## **Request for Hearing**

The Plaintiffs request the Court to grant oral argument on this motion.


Date:  November 12, 2021                    */s/ Julie Oliver-Zhang*
                                           Julie Oliver-Zhang, Esq. (DC Bar #997183)

                                           OLIVER-ZHANG LAW, PLLC
                                           810 New Hampshire Avenue NW
                                           Washington, DC 20037
                                           P: (202) 643-1110
                                           F: (202) 643-1596
                                           E: Julie@oliverzhanglaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2021, a copy of Plaintiff's Reply to Defendant's

Opposition to Plaintiff's Motion for Reconsideration was filed electronically with the Clerk of the

Court and served on all counsel of record and interested parties via ECF:

John Cella (DC Bar No. 1035356)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington D.C. 20001-3743
202-942-6771
john.cella@arnoldporter.com

Lori B. Leskin (*Pro Hac Vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
P: +1 212.836.8000
F: +1 212.836.8689
lori.leskin@arnoldporter.com

*Attorneys for Defendant*

/s/ Julie Oliver-Zhang
Julie Oliver-Zhang, Esq. (DC Bar #997183)