## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-3229 (RC) |
| | : | | |
| v. | : | Re Document No.: | 16 |
| | : | | |
| GARDEN OF LIFE, LLC, | : | | |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

#### DENYING PLAINTIFF'S MOTION TO RECONSIDER AND GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND TO D.C. SUPERIOR COURT

### I. INTRODUCTION

After an order of dismissal for lack of subject matter jurisdiction from this Court, Clean Label Project Foundation ("CLP") filed a motion for reconsideration pursuant to Rules 59(e) and 60 of the Federal Rules of Civil Procedure. *See Clean Label Project Foundation v. Garden of Life, LLC*, No. CV 20-3229 (RC), 2021 WL 4318099 (D.D.C. Sept. 23, 2021) (granting Defendant Garden of Life's motion to dismiss) ("Mem. Op."), ECF No. 15; Mem. P. & A. Supp. Pl. Mot. for Recons. of Order Dismissal, or in Alternative, Remand to D.C. Superior Court ("Mot. for Recons."), ECF No. 16.  CLP asks the Court to reconsider its judgment based on an alleged "intervening change of controlling law," citing *Animal Legal Defense Fund v. Hormel Foods Corp.*, 258 A.3d 174 (D.C. 2021) ("*ALDF*").  Mot. for Recons. at 6, 9.  In the alternative, CLP asks the Court for remand.  *Id.*  For the reasons discussed below, the Court denies reconsideration and grants remand to the D.C. Superior Court.

## II.  FACTUAL BACKGROUND

The Court previously described the facts of this case, Mem. Op. at 2–3, and thus confines its recital here to the most relevant facts, followed by this case's procedural history.  CLP, a nonprofit organization, sued Garden of Life under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq*.  The CPPA allows a nonprofit organization to bring an action "on behalf of itself or any of its members, or on any such behalf and on behalf of the general public," and also allows a "public interest organization" to bring actions "on behalf of the interests of a consumer or a class of consumers."  D.C. Code § 28-3905(k)(1)(C), (D).  CLP alleges that Garden of Life engaged in unlawful trade practices under the CPPA when it marketed and sold prenatal vitamin products in a manner that misled consumers into believing that the products were free of contaminants and superior to competing products, when in fact they were contaminated with toxic heavy metals, pesticides, and BPA.  Compl. ¶¶ 123–31, ECF No. 1-1 (describing alleged violation of D.C. Code § 28-3904).  CLP also alleges that the presence of these contaminants, which are "injurious to health," render Garden of Life's prenatal vitamins "adulterated" in violation of D.C. Code § 48-103.  *Id*. ¶ 132.

CLP filed this action in the D.C. Superior Court on August 25, 2020.  Garden of Life removed to this Court on November 9, 2020, alleging that removal was proper under the Class Actions Fairness Act because "CPPA is a 'similar State statute' that 'authorizes' class actions to be brought by one or more representative persons."  Notice of Removal at 3, ECF No. 1 (citing 28 U.S.C. § 1332(d)(1)(B)).  A few weeks after removal, Garden of Life filed a motion to dismiss for lack of standing.  *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 7.  On September 23, 2021, this Court granted Defendant's motion.  CLP filed the pending motion on

October 21, 2021, asking the Court to reconsider that dismissal order.  *See* Mot. for Recons.

According to CLP, it has standing under "CPPA, specifically D.C. Code § 28-3905(k)(1)(D) in

light of the recent [*ALDF*] decision in the D.C. Court of Appeals."  Mot. for Recons. at 9–10.

Thus, CLP seeks reconsideration or, in the alternative, remand to D.C. Superior Court.  *Id.*

Garden of Life opposed, and CLP replied.  *See* Def.'s Opp. to Pl.'s Mot. for Recons. ("Def.'s

Opp."), ECF No. 17; Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. for Recons. ("Reply"), ECF No. 18.

### III.  LEGAL STANDARDS

#### A.  Rule 59(e)

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to file "[a] motion to

alter or amend a judgment" within "28 days after the entry of the judgment."  Fed. R. Civ. P.

59(e).  "[R]econsideration of a judgment after its entry is an extraordinary remedy which should

be used sparingly."  *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015)

(quoting 11 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (3d ed.

2012)).  "Motions under Rule 59(e) are 'disfavored' and the moving party bears the burden of

establishing 'extraordinary circumstances' warranting relief from final judgment."  *Schoenman v.*

*FBI*, 857 F. Supp. 2d 76, 80 (D.D.C. 2012) (quoting *Niedermeier v. Office of Baucus*, 153 F.

Supp. 2d 23, 28 (D.D.C. 2001)).

Ultimately, "[a] Rule 59(e) motion is discretionary and need not be granted unless the

district court finds that there is an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice."  *Ciralsky v. CIA*, 355

F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir.

1996)).  And in the Rule 59(e) context, "clear error" is "a 'very exacting standard,'" *Bond v. U.S.*

*Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012) (citation omitted), tantamount to a requirement that the judgment be "dead wrong," *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (citation omitted)).  "Manifest injustice," on the other hand, requires a demonstration not only of "clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law." *Slate v. Am. Broad. Cos., Inc.*, 12 F. Supp. 3d 30, 35–36 (D.D.C. 2013).

Rule 59(e) does not permit a dissatisfied party "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (2d ed. 1995)).  The rationale for this rule is that "Rule 59(e) motions are aimed at 'reconsideration, not initial consideration.'" *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010); *see also Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) ("Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment . . . .").

### B.  Rule 60

Rule 60(a) allows a court to correct a "clerical mistake or a mistake arising from oversight or omission . . . ." Fed. R. Civ. P. 60(a).  This rule is narrowly construed and may not be invoked to "change the substance or order of a judgment." *Fanning v. George Jones Excavating, L.L.C.*, 312 F.R.D. 238, 239 (D.D.C. 2015).  It only applies when "the record indicates that the court intended to do one thing, but by virtue of a clerical mistake or oversight, did another." *Id.* (quoting 12 Moore's Federal Practice § 60.11(1)(a) (3d. ed. 2015)).  Unless

4

something in the record suggests that an error of "expression" rather than "substance" was made, the substance of a court order or judgment will be considered a "conscious decision." *Id.*

"Rule 60(b) provides a mechanism for relief from a judgment or order by permitting the court to relieve a party or its legal representative from a final judgment, order, or proceeding . . . ." *Oladokun v. Corr. Treatment Facility*, 309 F.R.D. 94, 97 (D.D.C. 2015). The burden falls to the party seeking relief to "show[] that he or she is entitled to relief." *Id.*; *see also Green v. Am. Fed'n of Labor and Cong. of Indus. Orgs.*, 287 F.R.D. 107, 109 (D.D.C. 2012). The final decision to grant or deny a Rule 60(b) motion is "committed to the discretion of the District Court," *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993), which "balance[s] the interest in justice with the interest in protecting the finality of judgments," *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004). The movant "must provide the district court with reason to believe that vacating the judgment will not be an empty exercise or a futile gesture." *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995).

## IV.  ANALYSIS

CLP purports to request that the Court "reconsider its order of dismissal under new controlling intervening law and manifest injustice and error of law and facts." Mot. for Recons. at 9 (citing Fed. R. Civ. P. 59(e) & 60). CLP, however, does not point to any manifest injustice or error of law and facts. Instead, CLP repeats its faulty notions about standing under Article III of the Constitution, which the Court addressed and rejected in its previous ruling. *See* Mem. Op. at 8–13. CLP's argument in the pending motion rests solely on an alleged change in controlling law which has no effect on this Court. *See* Mot. for Recons. at 11–18. The intervening case that

CLP relies on—*ALDF*, 258 A.3d 174 (D.C. 2021)—does not bestow subject matter jurisdiction as CLP claims. This case does not warrant reconsideration under Rules 59(e) and 60 of the Federal Rules of Civil Procedure and CLP fails to show how *ALDF* changes or controls federal law regarding subject matter jurisdiction. Thus, the Court denies CLP's motion to reconsider. However, despite CLP's previous failure to request remand in lieu of dismissal, the Court grants remand to D.C. Superior Court.

### A.  CLP's Motion Fails to Satisfy Rules 59(e) or 60

CLP's mere recital of its previous arguments and the decision in *ALDF* fail to establish an intervening change of controlling law for subject matter jurisdiction. CLP contends that *ALDF*, a decision the D.C. Court of Appeals issued on September 2, 2021, provides that "CPPA's standing requirement does not require a showing of injury-in-fact and modifies the Article III standing requirement, which entitles CLP to representational standing under D.C. Code § 28-3905(k)(1)(D)." Mot. for Recons. at 11 (capitalization altered). CLP relies heavily on the decision in *ALDF* but fails to provide any legal basis to demonstrate that *ALDF* is an intervening change of controlling law for this Court. As discussed further below, even in light of the *ALDF* decision, this Court continues to lack jurisdiction.

### 1.  Subject Matter Jurisdiction

The *ALDF* decision does not intervene, change, or control this Court's jurisdiction, and the Court will not assume that it sits in diversity jurisdiction. CLP invokes the *Erie* doctrine and suggests that to apply *ALDF* in this case, we must "hypothetically assume . . . that this Court sits

in diversity."[1]  Mot. for Recons. at 12.  CLP concedes, however, that "there is no federal question, nor is there minimal diversity alleged in the complaint."  *Id.* at 10.  A core principle for establishing standing is that "federal courts will not be asked to decide . . .  a case which is of a hypothetical or abstract character."  *Flast v. Cohen*, 392 U.S. 83 (1968) (citations omitted).

CLP misconstrues Article III standing and the *Erie* doctrine by arguing that "[i]f federal standing involves an assessment of the merits of the plaintiff's claim, the standing of the plaintiff who invokes state law must depend on state law."  Mot. for Recons. at 13 (citing F. Andrew Hessick, *Standing in Diversity*, 65 Ala. L. Rev. 417, 423 (2013) & citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  CLP's conclusion improperly leaps over the limits of federal jurisdiction.  "Because Article III limits federal judicial jurisdiction to cases and controversies, *see* U.S. Const. art. III, § 2, federal courts are without authority to decide disputes unless the plaintiff has standing—that is, a personal stake in the outcome of the controversy [sufficient] to warrant his invocation of federal-court jurisdiction."  *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 17 (D.D.C. 2018) (quoting *Chamber of Commerce v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011)) (emphasis omitted) (internal quotation marks omitted).  Furthermore, as Garden of Life noted, "[s]tanding in federal court is a question of federal law, not state law."  Def.'s Opp. at 6 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013)); *see also Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017)).

The D.C. Council can remove the Article III limitation in their own courts, and it

---

[1] CLP incorrectly states that "this Court granted the Defendant's Motion to Dismiss based on standing under the D.C. CPPA."  Mot. Recons. at 12.  The Court, however, stated in its previous ruling that CLP did not establish Article III standing and, even if the Court were to rely on the statutory requirements of CPPA, that would not cure CLP's failure to establish injury in fact under federal law.  *See* Mem. Op. 8–13.

apparently has according to *ALDF*, but it has no authority to remove constitutional limitations on Article III courts because of the Supremacy Clause. *See* U.S. Const. art. VI cl. 2; *Pub. Citizen, Inc.* 297 F. Supp. 3d at 17; *see also* Mot. for Recons. at 13–14 (explaining how D.C. Council has removed the Article III limitation from its own courts). "[S]tate rules that recognize standing need not be honored [in federal courts] if Article III requirements are not met." *Hagy v. Demers & Adams, LLC*, 882 F.3d 616, 624 (6th Cir. 2018) (quoting 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.14 (3d ed. 2017)); *see* Def.'s Opp. at 6. To clarify, this does not mean that the Court interprets D.C. law differently than D.C. courts in a manner that would violate the *Erie* doctrine. In this case, the Court is not interpreting D.C. law, nor is the Court disagreeing with *ALDF*. The Court simply lacks jurisdiction to hear this case because of the jurisdictional constraints of Article III. Thus, as noted previously, the Court must follow Supreme Court precedent, not the D.C. Court of Appeals, regarding Article III standing analysis. *See* Mem. Op. at 13 n.6.

As stated in the previous order, "[t]o establish standing, the plaintiff must show (1) it has suffered a 'concrete and particularized' injury (2) that is 'fairly traceable to the challenged action of the defendant' and (3) that is 'likely' to be 'redressed by a favorable decision,' i.e., a decision granting the plaintiff the relief it seeks." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (quotations omitted). Additionally, to satisfy Article III's requirements, the plaintiff's alleged "injury in fact" must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). This means the asserted injury must be specific to the plaintiff, such that the plaintiff has "a personal stake in the

outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quotation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

CLP lacks such an injury-in-fact.  As the Court explained in its previous order, "the D.C. Council's 'role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Beyond Pesticides v. Dr Pepper Snapple Grp., Inc.*, 2019 WL 2744685, at *1 (D.D.C. July 1, 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

As this Court previously stated:

> The Supreme Court has made it abundantly clear that "Article III standing requires a concrete injury *even in* the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1547–49 (emphasis added). This means that a plaintiff bringing a claim alleging an infringement of a statutorily conferred right—like CLP here— must still show evidence of an injury that "affect[ed] the plaintiff in a personal and individual way." *Id*. at 1543 (explaining that it "does not mean that a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").  Other courts in this District have recognized this rule in the context of the CPPA.  *See, e.g., Hancock*, 830 F.3d at 514; *Beyond Pesticides*, 2019 WL 2744685, at *1; *see also Mann v. Bahi*, 251 F. Supp. 3d 112, 119 (D.D.C. 2017) ("D.C. law is clear that the CPPA is meant to extend as far as Article III's requirements will permit—but it can go no further than that.") (citing *Floyd v. Bank of Am. Corp*., 70 A.3d 246, 251–52 (D.C. 2013)).

Mem. Op. at 11.

CLP cannot establish an injury-in-fact by merely restating arguments previously dismissed, even in light of *ALDF*.  *See Walsh v. Hagee*, 316 F.R.D. 1, 2 (D.D.C. 2014), *aff'd*, No. 14-5058, 2014 WL 4627791, at *1 (D.C. Cir. July 11, 2014) (denying reconsideration where plaintiff raised the same arguments he had briefed for defendant's motions to dismiss and plaintiff's motion for reconsideration, and had failed to show intervening change

in controlling case law).  CLP states that it ordered, purchased, and tested Garden of Life's

products "with an independent laboratory, advocated for and educat[ed] consumer[s], [and]

retained the undersigned counsel to pursue this action, none of which should be assumed . . .

were free of charge and should qualify for standing under Section (k)(1)(D)."  Mot. for Recons.

at 16.  As the Court already noted, "[W]hile presumably CLP has expended resources on this

lawsuit, a 'diversion of resources to litigation or investigation in anticipation of litigation does

not constitute an injury in fact sufficient to support standing.'"  Mem. Op. at 10 n.4 (quoting

*Equal Rts. Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011)); *see also Fair*

*Emp. Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994).

CLP cites again to federal cases predating *Spokeo* to incorrectly allege an injury in fact.

*See e.g.,* Mot. for Recons. at 27–28 (citing *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042

(D.C. Cir. 2010)).[2]  CLP ignores the factual differences in *Shaw* from its case and misconstrues

the *Shaw* court's judgment regarding an unjust enrichment claim under CPPA.  According to the

*Shaw* court*,* "a concrete and particular injury for standing purposes can also consist of the

violation of an individual right conferred on a person by statute."  *Shaw*, 605 F.3d at 1042

(quotation omitted); *see* Mot. for Recons. at 27.  That does not negate the fact, however, that a

plaintiff alleging an infringement of a statutorily conferred right —as CLP does here—must still

show evidence of an injury that "affect[ed] the plaintiff in a personal and individual way."

*Spokeo*, 578 U.S. at 339 (quotation omitted); *see* Mem. Op. at 11; *see also In re Vioxx Prod.*

*Liab. Litig.*, 874 F. Supp. 2d 599, 604–09 (E.D. La. 2012) (describing the *Shaw* court's standing

---

[2] In a similar case, defendants removed a CPPA action from D.C. Superior Court to District Court, which then remanded for lack of federal jurisdiction.  *See Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40 (D.D.C. 2020).

analysis and CPPA).  Thus, the Court is not persuaded by CLP invoking *Shaw* because the facts

are patently different from the present case and predate *Spokeo*.[3]

      This Court similarly rejects CLP's argument that "this [c]ourt has in the past routinely

considered the edicts of the D.C. Court of Appeals to interpret standing requirements under the

D.C. CPPA."  Reply at 12. (citing *Phoenix Restoration Grp., Inc. v. Liberty Mut. Grp. Inc.*, No.

18-cv-2121, 2020 WL 606403, *5 (D.D.C. Feb. 7, 2020); *Campbell v. Nat'l Union Fire Ins. Co.

of Pittsburgh, PA*, 130 F. Supp. 3d 236, 252 (D.D.C. 2015)).  To explain the CPPA more

broadly, the District Court in *Phoenix* mentioned decisions of the D.C. Court of Appeals.

*Phoenix*, 2020 WL 606403 at *5.  Unlike CLP, the parties in *Phoenix* did not have an issue with

Article III standing.  *Id*.  The *Phoenix* court also did not "interpret standing requirements under

the D.C. CPPA" as CLP suggests, instead the court provided general background information.

Reply at 12; *id*.  Additionally, unlike CLP, *Campbell* involved a putative class action asserting

claims for unjust enrichment and breach of contract.  *Campbell*, 130 F. Supp. at 241–42.  In

*Campbell*, the District Court found that a plaintiff had standing under the CPPA because of

"unauthorized charges and allegedly material misrepresentations about the [defendant's]

program," which constituted injuries-in-fact.  *Id.* at 252 (citing *In re APA Assessment Fee Litig.*,

766 F.3d 39, 47 (D.C. Cir. 2014) (holding that plaintiffs may recover mistaken overpayments via

---

      [3] In its Motion for Reconsideration, CLP includes a case chart.  *See* Mot. Recons. at 30–32.  None of those cases constitute an intervening change of controlling law. The D.C. Superior Court decided most of the cases in the chart and thus, those cases are not controlling. *See* U.S. Const. art. VI cl. 2.  Moreover, even if those cases established standing for plaintiffs under CPPA in the D.C. Superior Court and D.C. Court of Appeals, those cases have no bearing on this Court's Article III standing analysis (as discussed above).  In only one example of CLP's chart, the District Court decided a CPPA case, *Beyond Pesticides v. Monsanto Co.*, 311 F. Supp. 3d 82 (D.D.C. 2018), but that case did not even examine injury in fact because the court had diversity jurisdiction. Thus, none of the cases CLP provides are persuasive or controlling for this Court.

an unjust enrichment claim)).  Not only are the facts of *Phoenix* and *Campbell* different than the

present case, but neither case relied on the D.C. Court of Appeals' interpretation of Article III

standing.  Thus, CLP has failed to demonstrate an intervening change of controlling law and this

Court lacks jurisdiction to hear the case.

### 2.   Rules 59(e) and 60

Because *ALDF* is not an intervening change of controlling law on subject matter

jurisdiction, CLP has also not met its burden of establishing "extraordinary circumstances"

warranting reconsideration.  Fed. R. Civ. P. 59(e), 60; *Niedermeier*, 153 F. Supp. 2d at 28.

Furthermore, as Garden of Life noted, *ALDF* "was decided three weeks before the Court issued

its order in this case . . . [CLP] therefore had ample time to file a notice of supplemental

authority, apprising the Court of the decision and explaining its supposed impact."  Def.'s Opp'n

at 4; *see also, e.g., Jung v. Assoc. of Am. Med. Colleges*, 226 F.R.D. 7 (D.D.C. 2005) (holding

that reconsideration was not warranted because a statute was enacted early enough to allow for a

pre-judgment motion to amend the complaint and allege new violations).  CLP contends that the

"surreply period had long passed" and that it "did not become aware of [*ALDF*] until after the

Court's September 23, 2021 Order."  Mot. for Recons. at 9.  The surreply period is irrelevant

because there is no time limit on filing a notice of supplemental authority.[4]  Furthermore, it

would be improper for the Court to consider the additional evidence, Declaration of Jaclyn

---

[4] "Neither the Federal Rules of Civil Procedure nor the Local Rules of this Court provide for the filing of supplemental authorities.  In practice, however, this Court has allowed notices of supplemental authority to be filed without leave of court, provided that such notices are limited." *Sanders v. District of Columbia*, No. CV 06-1411 (PLF), 2017 WL 2573982 (D.D.C. June 14, 2017) (Mem. & Op., ECF No. 126) (comparing Fed. R. App. Pro. 28(j) ("A party may file a letter 'setting forth the citations' and 'stat[ing] the reasons for the supplemental citations' in 350 words or less.")).

Bowen, ECF No. 16-6, that CLP submitted to support its Motion for Reconsideration.  As Garden of Life stated, "[CLP] cannot submit evidence in connection with a motion for reconsideration that it could have submitted previously."  Opp'n at 8 (citing *Risenhoover v. U.S. Dep't of State*, No. CV 19-715 (BAH), 2020 WL 5416626, at *1 (D.D.C. Sept. 2, 2020); *Exxon Shipping v. Baker*, 554 U.S. 471, 486 n.5 (2008), *aff'd*, No. 20-5276, 2020 WL 8773055 (D.C. Cir. Dec. 22, 2020)).

Motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure cannot be used as "an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier."  *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).  In response to Garden of Life's motion to dismiss, CLP already argued that it has standing under either D.C. Code § 28-3905(k)(1)(C) ("organizational standing") or § 28-3905(k)(1)(D) ("representational standing").  Pl.'s Resp. Opp. Def.'s Mot. Dismiss ("Pl.'s Opp. Mot. Dismiss"), at 9–12 (ECF No. 10).  While CLP has dropped its argument for organizational standing and focuses now on representational standing, Mot. for Recons. at 11–18, CLP nonetheless repeats notions the Court has already rejected.  Thus, CLP fails to demonstrate why this Court's judgment warrants reconsideration under Rule 59(e).

Additionally, CLP fails to identify a "clerical mistake or a mistake arising from oversight or omission."  Fed. R. Civ. P. 60(a); *see* Mot. for Recons at 8-9.  Rule 60(a) may not be invoked to "change the substance or order of a judgment."  *Fanning*, 312 F.R.D. at 239.  As mentioned above regarding the Court's previous order, the Court's rejection of CLP's arguments concerning

13

Article III standing was a "conscious decision" and not an oversight.  *Id.*  Given that CLP fails to

point to a mistake or error, the Court will therefore exercise its discretion in protecting the

finality of its judgment and deny reconsideration.  *See Summers*, 374 F.3d at 1193.

Furthermore, CLP does not specify any reason for relief under Rule 60(b).  A court may

provide relief from a final judgment, order, or proceeding under Rule 60(b) for the following

reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered

evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied or applying the

judgment prospectively is no longer equitable; or (6) any other reason that justifies relief.  Fed.

R. Civ. P. 60(b); *see, e.g.*, *Charles v. United States*, 2022 WL 1045293, at *2 (D.D.C. Apr. 7,

2022).  To invoke Rule 60(b), CLP must give "reason to believe that vacating the judgment will

not be an empty exercise or a futile gesture."  *Murray v. District of Columbia*, 52 F.3d 353, 355

(D.C. Cir. 1995).  A motion under Rule 60(b)(6) "should only be granted in 'extraordinary

circumstances.'"  *Riley v. BMO Harris Bank*, 115 F. Supp. 3d 87, 94 (D.D.C. 2015) (quoting

*Ackermann v. United States.*, 340 U.S. 193, 199 (1950)); *see also Jordan v. U.S. Dep't of Lab.*,

331 F.R.D. 444, 453 (D.D.C. 2019), *aff'd* No. 19-5201, 2020 WL 283003 (D.C. Cir. Jan. 16,

2020).

Because CLP does not specify a reason for relief under Rule 60(b) or bring any facts to

the Court's attention that would implicate the application of Rule 60(b)(1)–(5), the Court

considers the catch-all provision of Rule 60(b)(6).  CLP asserts that a "manifest injustice and

error of law and facts" arose from Garden of Life "misstating the facts of [CLP's] claim and

misapplying legal standards" which "resulted in errors of law and facts in the September 23,

2021 Order."  Reply at 20; *see also* Mot. for Recons. at 6.  But CLP solely relies on *ALDF*,

which as the Court has explained did not give rise to a mistake of law at all, and thus fails to point to any "extraordinary circumstances" that would justify relief under Rule 60(b)(6).  *See* Reply at 20–21 (arguing that *ALDF* is the "new legal standard" governing Article III standing analysis).

Separate from identifying *ALDF* and other cases that do not change this Court's subject matter jurisdiction, CLP has not articulated why this Court should grant relief under Rules 59(e) or 60.  Thus, this Court will not further address CLP's unsupported assertions of "manifest injustice and error of law and facts."  *See* Mot. for Recons. at 8–9.  Undeveloped arguments are deemed waived.  *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the parties.  To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (internal quotation marks and citations omitted)); *see also Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . ." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).

**B.  The Court Remands to D.C. Superior Court for Lack of Subject Matter Jurisdiction**

For the first time, CLP now requests that this Court remand the case to D.C. Superior Court in the event that the Court lacks subject matter jurisdiction.  "When a case removed from state court no longer contains any basis for federal court jurisdiction, remanding the case to state court is the proper course of action."  *D.C. Pro. Taxicab Drivers Ass'n v. District of Columbia*, 880 F. Supp. 2d 67, 77 (D.D.C. 2012) (citation omitted); *see also Shaw*, 605 F.3d at 1044 ("Section 1447(c) of Title 28 provides that a 'case' removed from state court 'shall be remanded'

15

'[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'"). "A court must view motions to remand through the prism of limited federal jurisdiction: '[a]ny doubts as to whether federal jurisdiction exists must be resolved in favor of remand.'" *Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, No. 07-cv-1936, 2008 WL 2690731, at *2 (D.D.C. July 2, 2008) (citing *RWN Dev. Group, LLC v. Travelers Indem. Co. of Conn.*, 540 F. Supp. 2d 83, 86–87 (D.D.C. 2008)), *aff'd* 569 F.3d 485 (D.C. Cir. 2009); *see also Blue v. Fremont Inv. & Loan,* 584 F. Supp. 2d 10, 13 (D.D.C. 2008) (remanding to D.C. Superior Court due to lack of subject matter jurisdiction).

Garden of Life contends that CLP cannot ask for remand for the first time in a motion for reconsideration. *See* Opp'n at 10–11 ("Plaintiff should not be permitted to seek reconsideration of an issue it never raised in the first place and that was not discussed in the Order at issue."). CLP's request for remand, however, is a new motion and properly styled as an alternative motion. *Cf. Adams v. Boeneman*, 335 F.R.D. 452, 457 (M.D. Fla. 2020) (remanding to state court on an alternative, and supplemental, motion to reconsider the court's previous dismissal for lack of standing). Although there is normally a time limit for moving to remand after removal, that time limit does not apply if the Court lacks subject matter jurisdiction:

> A motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c) (emphasis added). Rather, § 1447(c) requires that the case "shall" be remanded if the Court lacks subject matter jurisdiction. *Id.*; *see also Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) ("When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district

16

court *must* remand the case. . . ." (emphasis added) (citing 28 U.S.C. § 1447(c)).

Additionally, as CLP noted, "remand may best promote the values of economy, convenience, fairness, and comity." *See* Mot. for Recons. at 28–29 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988)); Reply at 22. This case was originally in the D.C. Superior Court until Garden of Life removed it. *See* Notice of Removal at 3, ECF No. 1 (invoking the Class Action Fairness Act as a basis for removal).[5] And although CLP is incorrect that *ALDF* loosens the constitutional injury-in-fact requirement that this Court must abide by, *ALDF* does make clear that the lack of an injury-in-fact would not bar the D.C. Superior Court from exercising jurisdiction over this case. *See ALDF*, 258 A.3d at 184 (squarely holding that the D.C. "Council intended public interest organizations bringing suit under [CPPA section] (k)(1)(D) to be free from any requirement to demonstrate their own Article III standing"). Thus, remand could allow CLP to "fulfill legitimate interests" in light of *ALDF* by pursuing this claim in Superior Court. Mot. for Recons. at 29; *cf. Figueroa v. Am. Bankers Ins. Co. of Fla.*, 517 F. Supp. 2d 1266, 1268 (D. Colo. 2006) (remanding rather than dismissing after finding a lack of standing because "[i]t is entirely possible that the [state] courts . . . throw open their doors to a broader class of plaintiffs than do the federal courts"). Thus, this Court will remand the case to

---

[5] In the current posture, the Court need not definitively decide whether removal was appropriate in the first place. *See Davis v. Washington Mut., Inc.*, 233 F.R.D. 247, 249 (D. Conn. 2005) ("Because it is now clear that the Court lacks subject matter jurisdiction over Plaintiff's claims, the Court remands the case to state court regardless of whether it was properly removed at the outset."). The Court nevertheless notes that CLP has never styled the action as a putative class action and other courts in this district have determined that representative actions under the CPPA do not meet the requirements for removal under the Class Action Fairness Act, making the initial grounds for removal dubious. *See Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 139 (D.D.C. 2010) (finding it unconvincing that the Class Action Fairness Act authorized a CPPA representative action that was not filed as a class action).

the D.C. Superior Court for fairness and comity.

## V.  CONCLUSION

For the foregoing reasons, the Court denies reconsideration and, alternatively, grants remand to the D.C. Superior Court.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: May 24, 2022                                  RUDOLPH CONTRERAS
                                                     United States District Judge